UNITED STATES of America, Appellee,

v.

Clifton W. JOHNSON, Appellant.

No. 86–2494.

United States Court of Appeals,
Fifth Circuit.

April 14, 1987.

Joel Androphy, David Berg, Houston, Tex., for appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for appellee.

Before POLITZ, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Clifton Johnson appeals from his conviction for fraudulent possession of credit card account numbers in violation of 18 U.S.C. § 1029(a)(3). Finding Johnson's various contentions to be without merit, we affirm the judgment of the district court.

## I.

On August 1, 1984, federal secret service agents received information indicating that Clifton Johnson was involved in counterfeiting credit cards. During an ensuing investigation, secret service agents were made aware of an outstanding California warrant for Johnson's arrest on theft charges. Based on the California warrant, and together with a Spring Valley, Texas, police officer, secret service agents arrested Johnson on November 27, 1984, in Houston.[1] Immediately following the arrest, secret service agents took Johnson into federal custody, searched him, questioned him about his counterfeiting activities, and inventoried his car. The search of Johnson revealed an altered credit card. The inventory of his car revealed incriminating papers hidden beneath the spare tire and jack in the car's trunk.

Within twenty-four hours of his arrest, secret service agents brought Johnson before a state judge. Johnson waived extradition and was returned to California where he remained in custody until March 15, 1985, when he was released on bail pending trial. In the meantime, the Government filed a federal complaint on December 11, 1984, charging Johnson with unauthorized possession of altered credit cards and cardholder information. That same day, a federal magistrate issued a warrant for Johnson's arrest. Following his March 15 release on bail in California, Johnson was returned to Texas pursuant to a federal detainer to face federal charges.

On April 3, 1985, a federal grand jury indicted Johnson on eight counts of credit card fraud. In response, Johnson filed a motion to dismiss asserting that he was arrested by federal agents on November 27, 1984, and not indicted within thirty days as required by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. Johnson also filed a motion to suppress material discovered during searches of his car and person on November 27, 1984. The district court denied both motions in an order entered on January 21, 1986.

Johnson entered a conditional plea of guilty to Count Eight of the indictment, charging him with fraudulent possession of credit card account numbers, 18 U.S.C. § 1029(a)(3), and an unconditional plea of guilty to Count One of the indictment, charging him with conspiracy to defraud in violation of 18 U.S.C. § 371. Johnson received a five-year sentence on Count One and a consecutive three-year sentence on Count Eight. He now appeals challenging the district court's January 21 order denying his motion to dismiss for violation of the Speedy Trial Act and his motion to suppress evidence seized on November 27, 1984.

## II.

Johnson first asserts that the Government violated the Speedy Trial Act by delaying until April 3, 1985, to obtain an indictment. Under section 3161(b) of the Act, the Government must indict an accused within thirty days of his arrest, unless the time is extended for one of the eight reasons enumerated in section 3161(h). If the Government fails to meet this thirty day requirement, section 3162(a) requires the trial court to dismiss the complaint. Dismissal may be with or without prejudice.

---

1. Secret service agents recruited the local police officer to assist in making the arrest because the agents believed they lacked authority to make the arrest themselves. At least six secret service agents were present at the time of Johnson's arrest. Johnson was immediately taken into federal custody by the secret service once the Spring Valley officer had stopped Johnson's car.

Johnson's Speedy Trial Act claim requires us to determine when he was "arrested" within the meaning of 3161(b). Although Johnson was initially detained by federal agents on November 27, 1984, this detention did not trigger the Speedy Trial Act. Courts uniformly hold that an individual is not arrested under 3161(b) until he is taken into custody after a federal arrest for the purpose of responding to a federal charge. *See, e.g., United States v. Sanchez,* 722 F.2d 1501, 1509 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984); *United States v. Iaquinta,* 674 F.2d 260, 266 (4th Cir.1982); *United States v. Jones,* 676 F.2d 327 (8th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982). When an individual is promptly released from federal custody without the Government filing formal charges, there is no "arrest" within the meaning of 3161(b). *See United States v. Amuny,* 767 F.2d 1113, 1120 (5th Cir.1985); *United States v. Janik,* 723 F.2d 537, 542 (7th Cir.1983); *see also United States v. Redmond,* 803 F.2d 438, 440 n. 7 (9th Cir. 1986).

■ In the instant case, Johnson was promptly released from federal custody the day following his November 27 arrest, without federal charges having been filed. Given the absence of federal charges at that time, Johnson was not arrested within the meaning of 3161(b). The fact that Johnson's November 27 arrest was prompted by state charges which had already been filed does not suggest a different conclusion. An arrest for a violation of state law does not implicate the federal Speedy Trial Act, *United States v. Gomez,* 776 F.2d 542, 550 (5th Cir.1985); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982), even when federal officers participate in the arrest. *See United States v. Russo,* 796 F.2d 1443, 1451 (11th Cir.1986); *United States v. Janik,* 723 F.2d at 542.

■ The question remains whether the Speedy Trial Act was triggered by the Government's filing of a federal complaint on December 11, 1984. We conclude that it was not. Section 3161(b) requires that an indictment be filed within thirty days of arrest. Unlike an arrest, the filing of a complaint does not in itself impose a significant restraint on an accused's liberty. The complaint is merely a document on which action may or may not be taken. An accused may never even receive notice that a complaint has been filed. The filing of a federal complaint does not, in the absence of a federal arrest in connection with that complaint, trigger the time requirement of 3161(b). *See United States v. Copley,* 774 F.2d 728 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *United States v. Shahryar,* 719 F.2d 1522 (11th Cir.1983). This is true even when the accused, as here, is in state custody at the time the federal complaint is filed, for it is only a federal arrest that triggers 3161(b).[2]

We conclude that Johnson was not arrested within the meaning of section 3161(b) until he was turned over to federal officials following his release from state custody on March 15, 1985. It was only at that point that Johnson was under federal arrest in connection with the formal federal charges on which he was eventually convicted. *See United States v. Stead,* 745 F.2d 1170, 1172 (8th Cir.1984) (only a federal arrest in connection with the formal federal charge on which defendant is eventually tried triggers Speedy Trial Act). The federal indictment in this case was filed on April 3, 1985, well within thirty days of Johnson's section 3161(b) arrest. The Government did not, therefore, violate the Speedy Trial Act.

### III.

Johnson next challenges the lawfulness of his arrest. According to Johnson, the

---

**2.** A distinct but closely related question is whether a federal detainer filed with state authorities is a federal arrest within the meaning of 3161(b). This Court has recently joined the Eleventh and Sixth Circuits in concluding that it is not. *See United States v. Taylor,* 814 F.2d 172 (5th Cir.1987); *United States v. Shahryar,* 719 F.2d 1522 (11th Cir.1983); *United States v. Copley,* 774 F.2d 728 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

secret service lacked authority under either federal or state law to make the arrest. Since the arrest was unauthorized, Johnson argues that the district court erred in failing to suppress evidence obtained subsequent to that arrest.

We disagree with Johnson's premise that Texas law did not authorize federal secret service agents to make the arrest.[3] The Texas Code of Criminal Procedure provides that:

> The arrest of a person may be lawfully made also by any *peace officer or private person, without a warrant upon reasonable information that the accused stands charged in the courts of a State* with a crime punishable by ... imprisonment for a term exceeding one year ... (emphasis added).

Tex.Code Crim.Proc. art. 51.13 § 14 (Vernon 1979). Although federal secret service agents are not designated as "peace officers" under Texas law, *see* Tex.Code Crim. Proc. art. 2.121 (Vernon Supp.1987), they can make an arrest when Texas law authorizes such an arrest by a "private person," as in Article 51. *See, e.g., Sanchez v. State,* 582 S.W.2d 813, 815 (Tex.Crim.App. 1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980) (Federal border patrol agent could arrest individual for public drunkenness when Texas law authorized such an arrest by a private citizen.). Moreover, Article 2.121 of the Texas Code of Criminal Procedure provides that federal secret service agents "shall not be deemed peace officers, but shall have the powers of arrest, search and seizure as to felony offenses only under the laws of the State of Texas." Texas courts have construed Article 2.121 to "confer the same authority to arrest, search and seize on these federal officers as that already conferred on Texas peace officers." *Gilmore v. State,* 666 S.W.2d 136, 147 (Tex.Ct.App.1983) (Federal customs agent had authority under Article

2.121 to arrest defendant on state murder charges.).

Consequently, under Article 51.13 § 14, the federal agents here, either pursuant to their authority to arrest, search and seize under Article 2.121 or as private citizens, could arrest Johnson "without a warrant upon reasonable information that [Johnson stood] charged in the courts of a State with a crime punishable by ... imprisonment for a term exceeding one year...." Johnson admits that federal agents knew of the California warrant for his arrest on state theft charges and that those charges were punishable by a term of imprisonment exceeding one year. It thus appears that the secret service did act upon reasonable information that Johnson stood charged of a felony in another state.

 Johnson argues, however, that Article 51 only authorizes the arrest of "fugitives from justice." Given the apparent absence of a California fugitive warrant, Johnson asserts that he was not a fugitive subject to arrest under Article 51. Even if Johnson's narrow construction of Article 51.13 § 14 is correct, a point we need not decide, we have little difficulty concluding that Article 51 authorized Johnson's arrest on the outstanding California arrest warrant. Under Texas law, a fugitive from justice is a person who commits a crime and is charged in one state, departs therefrom, is sought in connection with that charge, and is found in another state. *See, e.g., Ex parte McDaniel,* 76 Tex.Cr.R. 184, 173 S.W. 1018 (1915); *Ex parte Robertson,* 151 Tex.Cr.R. 635, 210 S.W.2d 593 (1948). Johnson was charged with a criminal offense he committed while in California, a California warrant was issued for his arrest, and he was found by federal secret service agents in Texas. In these circum-

---

**3.** The federal statute outlining the powers, authorities, and duties of the United States Secret Service neither authorizes nor expressly prohibits an arrest by secret service agents on state charges. *See* 18 U.S.C. § 3056. Johnson fails to argue that the federal statutory authority granted such agents is the exclusive source of their authority to arrest, *compare United States v. Prim,* 698 F.2d 972, 978 (9th Cir.1983) (Hug, J., concurring), *with, United States v. Burgos,* 269 F.2d 763 (2d Cir.1959), *cert. denied,* 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960), and we decline to reach the issue.

stances, secret service agents had authority under Texas law to make the arrest.[4]

## IV.

Johnson also raises several fourth amendment challenges to the legality of the inventory of his car. The Supreme Court has held that "an inventory search may be 'reasonable' under the Fourth Amendment even though it is not conducted pursuant to warrant based on probable cause." *Colorado v. Bertine,* —— U.S. ——, ——, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *see also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Inventory searches serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.

■ Johnson suggests that the inventory procedures here were unreasonable because the agents failed to pursue less intrusive means of protecting themselves and Johnson's property. In particular, Johnson suggests that the agents should have offered him an opportunity to safeguard his belongings or to relieve the police from liability. The Supreme Court has recently concluded, however, that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Colorado v. Bertine,* 107 S.Ct. at 742. The Court noted that the "reasonableness of any particular

governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Id.* (*quoting Illinois v. Lafayette,* 462 U.S. at 647, 103 S.Ct. at 2610). The Court in *Bertine* concluded that police are not required to provide defendants with an opportunity to make alternative arrangements for the safekeeping of their property. This conclusion forecloses Johnson's initial challenge to the inventory procedures followed in the instant case.

■ Johnson also challenges the scope of the inventory as unreasonable. According to Johnson, there was no need for the secret service to inventory the trunk of his car since the trunk was locked. Instead, Johnson suggests that the agents should have inventoried the trunk as a closed unit. This Court has, however, expressly approved the inspection of an automobile trunk as a valid inventory search. *United States v. Orozco,* 715 F.2d 158, 161 (5th Cir.1983);[5] *see also United States v. Edwards,* 577 F.2d 883, 894 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978) (police may ordinarily inspect the trunk); *United States v. Wade,* 564 F.2d 676 (5th Cir.1977). An inventory search of a trunk pursuant to standardized procedure helps guard against claims of theft, vandalism, or negligence. It also helps avert any danger to police or others by dangerous instrumentalities hidden in the trunk. This is true regardless of whether the trunk was locked. Thus, Johnson's challenge to the scope of the inventory search is also without merit.[6]

---

4. Johnson also argues that the Spring Valley police officer involved in his arrest lacked statutory authority since Johnson was arrested in Houston rather than Spring Valley. We need not consider this point, however, since the presence of a state police officer, even if unauthorized, did not deprive federal secret service officers of authority to take Johnson into custody. *Cf. Rozell v. State,* 662 S.W.2d 634 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd) (Houston police officers could make arrest in Houston, even though accompanied by Spring Valley police officers).

5. In *Orozco,* the Court held in the alternative that law enforcement officers had probable

cause to search the trunk for contraband. 715 F.2d at 160. Contrary to Johnson's suggestion, this alternate holding did not render dicta the Court's holding that the search was a valid inventory search.

6. In the instant case, the agent who inventoried Johnson's car discovered incriminating evidence hidden beneath the spare tire in the trunk. The agent testified at the pretrial suppression hearing that he looked underneath the tire because valuable tools are often stored in that location. The agent further testified that the scope of his inventory was regulated by standardized procedure outlined in a secret service manual.

Johnson's final assertion is that the inventory procedure was a pretext concealing an investigatory police motive. In *Bertine*, the Supreme Court indicated that an inventory is unreasonable if conducted "in bad faith or for the sole purpose of investigation." 107 S.Ct. at 742. Similarly, in *Opperman*, the Court emphasized the absence of any suggestion that the inventory "was a pretext concealing investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100. In determining whether an inventory search was pretextual, more is involved than deciding whether the police expected to find incriminating evidence. "[T]he pretext arises out of the fact that the evidence is found in a search which would not have occurred at all but for the manipulation of circumstances and events by the police because of their desire to conduct a search which could not otherwise be lawfully made." 2 Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5(e), at 141 (2d ed. 1987).

■ A pretextual search can occur, for example, where police discover evidence in a search incident to or an inventory following an arrest for an offense which the officer would have simply ignored but for his desire to search. *See United States v. Cruz*, 581 F.2d 535, 541–42 (5th Cir.1978) (en banc); 2 Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5(e), 141 (2d ed. 1987). When a defendant alleges that an arrest was pretext to conduct an otherwise impermissible search, the appropriate inquiry is whether a reasonable officer would have made the arrest absent an illegitimate motive to search.[7] *See United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986). If a reasonable officer would not have made the arrest absent illegitimate motive, then the resulting search incident to or inventory is unlawful.

On at least two occasions, this Court has concluded that an arrest was pretext to obtain evidence of additional criminal activity. In *United States v. Cruz*, a deputy sheriff noticed that a vehicle he had just passed on the highway failed to follow him over the next hill. According to the deputy's testimony, he surmised that the vehicle had made an illegal u-turn and so decided to stop the vehicle to issue a traffic warning. When several of the occupants were unable to document their immigration status, the deputy arrested the vehicle's occupants for violations of immigration law. This Court, sitting en banc, held that the stop was an unreasonable seizure under the fourth amendment because its purported rationale was merely a pretext for an invalid purpose.

Concluding that the district court's finding of no pretext was clearly erroneous, the Court found that the deputy did not stop the car because of a possible traffic violation but instead was "hunting for illegal aliens and stopped [the] automobile in order to inspect its occupants." 581 F.2d at 542. That the deputy could have validly stopped the car for a traffic violation was not determinative. Rather, the stop was unreasonable because it was clear that a reasonable officer, in the particular circumstances of that case, would have been uninterested in pursuing the traffic offense absent a desire to find evidence of a greater offense. *See United States v. Smith*, 799 F.2d at 710.

Similarly, in *Amador-Gonzalez v. United States*, 391 F.2d 308, 315 (5th Cir.1968), this Court found that an arrest for a minor traffic offense was pretext to conduct an otherwise impermissible search. The Court acknowledged that at the time of the stop by state narcotics officers, the defendant had made several illegal turns and been clocked at a speed above the speed limit. The Court nevertheless concluded that the arrest was a pretext to enable the arresting officers to search the defendant and his car. The search incident to this pretextual arrest was, therefore, unreasonable. In

---

**7.** The Supreme Court has recently stated that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (*quoting Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1722–23, 56 L.Ed.2d 168 (1978)).

reaching its conclusion, the Court emphasized that the arrest was made by narcotics officers, who generally did not make traffic arrests.

■ In the instant case, our inquiry is thus whether a reasonable secret service agent would have arrested Johnson on the outstanding California arrest warrant absent an illegitimate motive to search Johnson's car. Given the district court's finding of no pretext, we appraise all the relevant facts surrounding Johnson's arrest in the light most favorable to the Government. Our careful review of the record reveals sufficient evidence to support the district court's finding. While we have little doubt that the secret service generally has no interest in executing state arrest warrants,[8] the secret service did have a legitimate interest in executing the particular state warrant involved here. That warrant resulted from an investigation of Johnson's counterfeiting activities in California, an investigation carried on by the Los Angeles Police Department with the assistance of the secret service office in Los Angeles.[9] The state charges, which included possession of counterfeit credit cards, were closely related to the ongoing secret service investigation of Johnson's activities in Houston. After California state authorities were unsuccessful in executing the warrant themselves, they contacted the secret service for assistance. This request for assistance ultimately culminated in Johnson's arrest by secret service agents in Houston.

The legitimate secret service motive to arrest Johnson suggested by the foregoing facts would, in these circumstances, almost certainly be alone sufficient to sustain the district court's finding of no pretext. We need not rely, however, solely on convincing evidence indicating a legitimate motive for the arrest. The record also contains testimony indicating that the secret service had no reason to suspect that Johnson's car might contain incriminating evidence. Given this testimony, the district court could properly find that Johnson's arrest was not the result of an illegitimate motive to search.

Johnson argues that even if the arrest was not pretext to search, the decision to inventory his car once he was lawfully in custody was pretextual. Johnson relies on testimony of Secret Service Agent Jerry Wyatt, who inventoried the car. According to Johnson, Wyatt testified that his conversations with Johnson prior to the inventory revealed no mention of valuables in the car. Johnson apparently assumes that Wyatt was required to ask Johnson if an inventory was necessary to protect valuables. He was not. *See Colorado v. Bertine*, 107 S.Ct. at 742. Johnson also claims that Wyatt testified that he was not in fear of any weapons located in the car. In fact, Wyatt testified that he did not feel endangered by Johnson. Based on Wyatt's testimony that the inventory was in accord with standard secret service procedures,[10] we conclude that the district court's finding that the inventory itself was not pretextual is supported by the record.

### V.

Having rejected each of Johnson's contentions, we affirm the judgment of the district court.

AFFIRMED.

---

**8.** The record is silent on this point.

**9.** The United States Secret Service is expressly empowered to detect and arrest any person who violates any of the laws of the United States relating to electronic fund transfer frauds, credit and debit card frauds, and false identification documents or devices. *See* 18 U.S.C. § 3056(b)(3).

**10.** Johnson complains that the inventory was conducted by only a single agent. Wyatt testified, however, that standard secret service procedures permitted inventory by a single agent.