# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 95-20963
_____


## UNITED STATES OF AMERICA,

**Plaintiff-Appellee,**

**versus**

## ERNEST RAY KOONCE, JEFFERY RAYMOND KOONCE, JASON KOONCE, MATHEW KOONCE, and ELEANOR KOONCE,

**Defendants-Appellants.**

_____

### Appeal from the United States District Court
### for the Southern District of Texas
### (CR H-94-100)
_____

April 17, 1997

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.

JONES, EDITH H, Circuit Judge:[*]

Appellants Ernest Koonce ("Ernest"), Eleanor Koonce ("Eleanor"), Jeffery

Koonce ("Jeffery"), Jason Koonce ("Jason"), and Mathew Koonce (" Mathew") appeal their

---

[*]       Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

various convictions stemming from the possession of guns and a family counterfeiting operation. Finding no error below, we affirm.

## I. FACTUAL BACKGROUND

Ernest and Eleanor Koonce are the parents of Jeffery, Jason, and Mathew. During the summer of 1993, all resided together in an apartment in Conroe, Texas. In July 1993, a then-confidential informant, Patrick Petrick, informed the Bureau of Alcohol, Tobacco, and Firearms ("ATF") that there were two felons in possession of firearms at the Koonce residence. On July 23, 1993, a federal magistrate judge issued a search warrant authorizing the seizure of firearms from the Koonce residence. After obtaining the search warrant, the ATF agents again met with Petrick who provided the agents with vague information regarding the Koonce family's alleged involvement in stealing and counterfeiting payroll checks and other documents. In light of the newly received information and having no expertise in the area of counterfeiting, the ATF notified the Secret Service. The ATF requested the presence of a Secret Service agent at the execution of the search warrant at the Koonce family apartment in order to alert to any signs of counterfeiting activity. Pursuant to the ATF's request, the Secret Service sent Special Agent Barry Ramsey, an agent possessing several years of experience in the area of counterfeiting.

After briefly speaking with ATF officers and Petrick, Ramsey accompanied the ATF for the execution of the search warrant on the evening of July 23, 1993. At the request of the ATF, the Conroe Police Department's SWAT team assisted in the execution of the search warrant as well.

Upon entry into the apartment, the ATF officers and the SWAT team discovered and seized four firearms, including two unregistered "sawed-off" shotguns. When Agent Ramsey entered the residence, he proceeded to what appeared to be the master bedroom of the apartment. He

immediately noticed a computer sitting on a desk. Connected to the computer was a color printer, and coming from the printer was a Houston-area car dealership's payroll check. The check was complete, except for the payee name, the amount, and the signature. Also sitting on top of the computer desk were two additional payroll checks purporting to be from the same car dealership -- one was a completed back side of a check and the other was a completed front of a check with the payee's name filled in. Sitting on the bed in the same room were blank United States identification cards, social security cards, a Texas driver's license, and laminating materials. Also sitting out in plain view in the room was a "writeman" pen and pencil set,[1] a notary seal, and a software program often used by businesses to print their own checks.

Relying on his experience in the area of counterfeiting, Special Agent Ramsey concluded that all of these items were being used in a counterfeiting operation. Therefore, Ramsey seized the computer and related items. At this time, Ramsey did not search the computer's hard drive.

Ramsey subsequently discovered that the computer was the property of a Dallas-Fort Worth area rental store. After contacting the rental store, Ramsey learned that the computer had been rented to Richard Lutman. Lutman informed Ramsey that on the day he had rented the computer, Lutman had given the computer to Eleanor Koonce. At that time, Eleanor took the computer to her residence in Conroe. Ramsey obtained written permission from Lutman to search the hard drive of the computer. After receiving Lutman's permission to search the hard drive,

---

[1]A writeman pen and pencil set is often used by counterfeiters to make very fine details necessary to make a document look authentic.

Ramsey found, among other things, evidence of the car dealership payroll check that had been in the printer.

The Conroe Police Department officers arrested Ernest, Eleanor, and Jeffrey on July 23, 1993 upon execution of the search warrant. State arrest warrants were issued for Mathew and Jason for engaging in organized crime, and both were arrested on September 2, 1993. Upon their respective arrests, all appellants were held in state custody for various state weapons charges. Although it had conducted investigation into the case, the Montgomery County district attorney's office chose not to present the case to the Montgomery County grand jury. On May 6, 1994, all appellants were indicted in federal court.

Ernest Koonce was held in state custody from the time of his arrest on July 23, 1993 until he was indicted in federal court on May 6, 1994. Eleanor was held in state custody for nine weeks following her arrest on July 23, 1993. Jeffery was held in state custody from July 23, 1993 to August 19, 1993. Mathew was held in state custody from September 2, 1993 to December 9, 1993. Jason was held in state custody from September 2, 1993 until he was indicted in federal court on May 6, 1994.

All appellants were tried in the same trial before a jury. All were convicted of conspiracy to make and possess counterfeit securities in violation of 18 U.S.C. § 371. In addition, Ernest and Eleanor were convicted of possession of an illegal firearm in violation of 26 U.S.C. § 5861(d); Jason, Mathew, and Jeffery were convicted of possession of a counterfeit security in violation of 18 U.S.C. § 513(a); and Ernest was convicted of making a counterfeit security in violation of 18 U.S.C. § 513(a), possession of a firearm in violation of 18 U.S.C. § 922(g), and possession of an illegal firearm in violation of 26 U.S.C. § 5861(d).

4

## II. DISCUSSION

### A.

All appellants claim that the district court erred in denying their motions to suppress the evidence of the counterfeiting activities. They argue that their Fourth Amendment right to be free of unreasonable search and seizure was violated when, in executing the search warrant, the officers seized computer equipment and the other items. They also complain that the subsequent search of the hard drive of the computer was improper. We disagree.

In reviewing a district court's denial of a motion to suppress evidence, we review factual findings for clear error and conclusions of law *de novo. See United States v. Buchanan,* 70 F.3d 818, 825 (5th Cir.), *cert. denied,* ___ U.S. ___, 116 S.Ct. 1340 (1996). All evidence is viewed in the light most favorable to the prevailing party below. *See id.*

The exclusionary rule requires that evidence obtained in violation of the Fourth Amendment be suppressed in a criminal proceeding against the victim of the illegal search and seizure. *See id.* However, the plain view doctrine provides a well-established exception to the exclusionary rule:

> The "plain view" doctrine will justify a warrantless seizure if: (1) the officers lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was "immediately apparent"; and (4) the officers had a lawful right of access to the items.

*Id.* at 825-26 (relying on *Horton v. California,* 496 U.S. 128, 136-37 (1990)).

In this case, Agent Ramsey had lawfully entered the area where the items were located. As he was a Secret Service agent who was called upon to assist in the execution of a federal search warrant, it was neither unusual nor improper for him to do so. *See* 18 U.S.C. §§ 3105

5

(providing that a search warrant may be served by any officer authorized by law to do so), 3056(c)(1)(A) (authorizing Secret Service agents to execute search warrants).

The computer and related items were in plain view. Agent Ramsey testified that the computer and printer were sitting on a computer desk in the master bedroom of the Koonce residence. Moreover, the district court did not err in concluding that the incriminating nature of the items was immediately apparent to Agent Ramsey. As we have previously discussed:

> The incriminating nature of an item is "immediately apparent" if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty. In reviewing probable cause determinations, we must consider the totality of the circumstances--*including the officers' training and experience as well as their knowledge of the situation at hand.*

*Buchanan,* 70 F.3d at 826 (emphasis added; citations omitted). Agent Ramsey was a Secret Service officer trained and experienced in the area of counterfeiting. His presence had been requested at the execution of the warrant upon the Koonce residence because of the possibility of counterfeiting activity. As the district court concluded,

> The Secret Service agent testified that he saw a computer, blank social security cards, blank United States of America identification cards, laminating equipment, and a partially completed company paycheck in the printer, all in plain view. [Ramsey] testified that, in light of his experience, the foregoing evidence demonstrated different 'stages' of the counterfeiting process. This, coupled with [Petrick's] tip, clearly establishes 'a practical, non-technical probability that incriminating evidence is involved . . . and will be useful in establishing that a crime has been committed."

Order of district court at 9 (quoting *United States v. Hill,* 19 F.3d 934, 989 (5th Cir. 1994)). We find no error.

6

Although the issue whether the search of the hard drive of a computer that has been seized pursuant to a plain view seizure is theoretically interesting and novel,[2] the facts in this case do not compel us to decide that issue here. The evidence presented at the hearing on the defendants' motions to suppress established that the computer's hard drive was not searched until after the authorities had received written permission from the person to whom the computer was rented. Therefore, the search was validated by permission.

**B.**

All appellants also complain that they were held in violation of the Speedy Trial Act, 18 U.S.C. § 3161(b), because they were indicted more t han 30 days after their respective arrests. This court reviews a district court's factual determinations regarding the Speedy Trial Act for clear error; the district court's legal conclusions are reviewed *de novo*. *See United States v. Johnson,* 29 F.3d 940, 942 (5th Cir. 1994).

The Speedy Trial Act generally requires that the federal government indict an accused within thirty days of his arrest. *See* 18 U.S.C. § 3161(b)*; United States v. Johnson,* 815 F.2d 309, 311 (5th Cir. 1987), *cert. denied,* 484 U.S. 1068 (1988). We have repeatedly held that the Speedy Trial Act is not triggered until an individual is taken into custody after a *federal* arrest for the purpose

---

[2]The issue whether the hard drive of a computer seized pursuant to a valid search warrant may be searched without first obtaining a search warrant for the hard drive has been considered in a few jurisdictions. The courts have uniformly concluded that a search warrant for the hard drive is not necessary. *See, e.g. Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353 (1991) (defendant had no expectation of privacy for information that had been attempted to be deleted  but was recoverable from the hard drive of a computer when the authorities had properly seized the computer pursuant to a valid warrant); *State v. Tanner,* 534 So.2d 535 (La. Ct. App. 1988) (search of hard drive, although not specifically listed in search warrant, was proper where the computer was subject to seizure pursuant to the warrant); *People v. Loorie,* 630 N.Y.S.2d 483 (N.Y. Crim. Ct. 1995) (police did not exceed their authority in searching hard drive of computer when computer was seized pursuant to a validly issued search warrant).

of responding to a *federal* charge. *See Johnson,* 815 F.2d at 312. Appellants argue that because their arrests stemmed from the execution of a federal search warrant by federal as well as state officers and the only charges that they were ever indicted for were violations of federal law, the Speedy Trial Act was triggered. We disagree.

The law is clear that an arrest for a violation of state law does not implicate the Speedy Trial Act, even when federal officers participate in the arrest. *See id.* In this case, appellants were arrested by state officers and were held on *state* charges. An arrest made by state officers, even if state and federal officers are cooperating at the time, does not start the running of the thirty day time period. *See United States v. Charles,* 883 F.2d 355, 356 (5th Cir. 1989) (quoting *United States v. Taylor,* 814 F.2d 172, 175 (5th Cir.), *cert. denied,* 108 S.Ct. 186 (1987)), *cert. denied,* 493 U.S. 1033 (1990). Even where federal officials are involved "intimately" in the defendant's arrest, the Speedy Trial Act is not triggered if no federal criminal charges have been filed against the defendant at the time of his arrest. *See United States v. Amuny,* 767 F.2d 1113, 1120-21 (5th Cir. 1985). This court has previously ruled that the Speedy Trial Act was not implicated when the county officials wrongfully held the defendant for four months prior to the issuance of a federal indictment:

> Though [county officials] may have thought [the defendant] was to be charged by federal authorities, and for that reason detained him, the fact remains that [the defendant] was not under a federal detainer; he was not the subject of a federal complaint; there were no federal charges pending against him. . . . [The county's] wrongful actions simply did not trigger the Speedy Trial Act.

*United States v. Charles,* 883 F.2d 355, 356 (5th Cir. 1989), *cert. denied,* 493 U.S. 1033 (1990); *see also United States v. Gerald,* 5 F.3d 563, 566 (D.C. Cir. 1993) (an arrest by federal officers engaged in a search pursuant to a federal warrant that was issued on suspicion of violations of federal law does

8

not trigger the Speedy Trial Act until the arrest was accompanied by federal charges), *cert. denied,* ___ U.S. ___, 114 S.Ct. 2168 (1994).

In this case, appellants were arrested by state officers and were held on *state* charges. Although appellants argue that the state and federal authorities colluded in order to circumvent the Speedy Trial Act and that such collusion serves to trigger the Speedy Trial Act,[3] after thorough briefing and argument to the district court, the court rejected their theory of collusion. This ruling by the district court is supported by the record and is not clearly errorneous. Therefore, we will not disturb it.

## C.

Appellants also complain that Ernest was improperly sentenced under the Sentencing Guidelines, that Eleanor was improperly denied a mistrial, that there was insufficient evidence to support Eleanor's convictions, and that there was insufficient evidence to support Jason's conviction for possession of a forged security. After careful consideration of these issues and a thorough review of the record, we find no error.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[3]Whether collusion between federal and state authorities triggers the Speedy Trial Act is an issue of first impression in this jurisdiction. However, other jurisdictions considering the issue have ruled that such collusion does trigger the 30-day requirement of the Speedy Trial Act prior to the filing of federal charges. *See, e.g., United States v. Benitez,* 34 F.3d 1489, 1494 (9th Cir. 1994), *cert. denied,* ___ U.S. ___, 115 S.Ct. 1268 (1995); *United States v. Sims,* 779 F.2d 16, 17 (8th Cir. 1985).