**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Warren Edward WALDEN,**
**Defendant-Appellant.**

**No. 82-1401**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 31, 1983.

Rehearing Denied July 19, 1983.

Charles Louis Roberts, Joseph Abraham, El Paso, Tex., for defendant-appellant.

Sidney Powell, Joseph Turner, Asst: U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

On March 19, 1982, Robert Nestoroff made a routine "ramp check" at the Austin, Texas municipal airport. Nestoroff, an experienced "air smuggling investigator" for the Texas Department of Public Safety, became suspicious when he noticed that the identifying numbers of one plane had been taped on rather than painted. Taped-on numbers are easily alterable in a furtive attempt to disguise a plane's identity; the tape thus evidences the surreptitious nature of the plane's mission. According to a standard air smuggling profile, an aircraft displaying taped-on numbers will often be involved in drug-smuggling activities.

With the thought that the plane might have been stolen, Nestoroff ran a registration check on the plane and inquired about when it had arrived, and who had been its pilot. A call to his agency revealed no record that the plane had been stolen. He learned also that the pilot, a 35 year-old white male, had given the company name of "Aerial Advertisers" of Houston, Texas. Despite the cooperation of the phone company's directory assistance, Nestoroff was unable to locate any firm by that name in Houston.

Nestoroff reported to the airport early the next morning to continue surveillance. Shortly before 8:00 a.m. he saw the pilot walk out to the plane carrying a black suitcase. As Nestoroff approached the man, he recognized him to be Warren Walden, a convicted narcotics smuggler. Nestoroff identified himself and requested Walden's pilot license and his current medical certificate, the latter of which a pilot is required by law to carry. Walden produced only his pilot's license, stating that his medical certificate was lost. Nestoroff thereafter asked for the aircraft's registration and its airworthiness certificate. Walden produced only a temporary registration certificate and a photocopy of an airworthiness certificate. From past experience, Nestoroff knew that the photocopying of an airworthiness certificate is a violation of FAA regulations.

Walden stated that the aircraft belonged to one C.W. Scott of Aerial Advertiser's, but added that he had never met Mr. Scott. Nestoroff's curiosity was piqued; he inquired how Walden had come to possess the plane. Walden informed him that a man called "Vic" (he did not know Vic's last name) had given him permission to take the aircraft to El Paso, Texas. Walden explained that he was en route to El Paso from Florida, and had spent the night in Houston.

On the basis of Walden's vague and curious answers, his failure to produce satisfactory documents upon request, and the fact that the plane displayed taped-on numbers, Nestoroff suspected that the airplane might be stolen. Nestoroff therefore told Walden that he was impounding the plane until proper ownership could be established. At the time that Nestoroff impounded the airplane, he had not yet placed Walden under arrest. When Walden tendered a "handmade key" for the plane, Nestoroff placed him under arrest for violation of Vernon's Ann.C.C.P. tit. 1A, art. 1816 ("to prevent the consequences of theft"). After Nestoroff advised Walden of his Miranda rights, Walden stated:

Look, I know the aircraft is not stolen. Let me rephrase that. I know I did not steal the aircraft.

Nestoroff placed Walden in handcuffs and told him he was going to inventory the plane. Nestoroff then asked Walden if there was anything in the plane he did not wish the officer to see. Walden replied, "Well, when I got into the plane to bring it out, I saw a shotgun on the floor. I also have a .25 caliber automatic and $22,000.00 in my suitcase."

Nestoroff and a supervisor conducted an inventory search of the plane. The search uncovered a sawed-off shotgun, a .45 pistol, ammunition, and a black suitcase. Nestoroff acquired a search warrant for the suitcase and found $22,000 in United States currency and a .25 caliber pistol inside of it.

Walden was indicted in two counts for firearms violations. After holding an evidentiary hearing, the trial court denied Walden's motion to suppress. In a bench trial, Walden was convicted on one count of possession of a firearm by a convicted felon. Walden filed a timely notice of appeal.

## I. *The Arrest*

Walden first argues that his arrest was not supported by probable cause. A review of the foregoing facts, which Walden does not dispute and which are clearly supported by the evidence, reveals that Officer Nestoroff at first had only a hunch that the plane was stolen. As he made further inquiry and investigation, however, his suspicions heightened. The threshold issue for this Court to determine is whether, upon receipt of the handmade key, Nestoroff's subjective belief that an offense had been committed was legally sufficient by objective standards.

 The correctness of Nestoroff's belief that the plane had been stolen is not, of course, at issue. Probable cause is an objective standard; it requires inquiry into whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable man's belief that an offense has been or is being committed. *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *United States v. Rojas,* 671 F.2d 159, 165 (5th Cir.1982). In determining whether probable cause existed to make an arrest, the experience of the arresting officer must be afforded due consideration. *United States v. Woolery,* 670 F.2d 513, 515 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982). "Conduct innocent in the eyes of the untrained may carry entirely different messages to the experienced or trained observer." *Id., quoting from United States v. Clark,* 559 F.2d 420, 424 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977).

 A slight dispute arises as to whether Walden was arrested before or after he handed Nestoroff the plane's key. The district court considered the testimony and found that the arrest was made immediately after Nestoroff discerned that the plane's key was handmade. The fact-finding was supported by Nestoroff's testimony. Viewed in light of all the circumstances known to Nestoroff (particularly Walden's inability to produce requested documents, his criminal record, the taped-on numbers, and the existence of a handmade key), the arrest was not unreasonable. Probable cause supported the arrest, and therefore there has been no fourth amendment violation. *United States v. Woolery,* 670 F.2d at 515–16.

## II. *Search and Seizure*

 Once the plane had been impounded and Walden had been arrested, Nestoroff conducted an inventory search of its contents. Having reasonably believed the plane to be stolen and having validly arrested Walden, Nestoroff had the legal authority to conduct the search. *South Dakota v. Opperman,* 428 U.S. 364, 369–76, 96 S.Ct. 3092, 3097–100, 49 L.Ed.2d 1000 (1976); *United States v. Staller,* 616 F.2d 1284, 1289–90 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). The inventory search uncovered a suitcase. Walden's own statement, uttered in recognition of the *Miranda* rights he had been read, indicated that it contained a pistol. On the basis of Walden's statement (as well as the fact that other weapons had already been discovered), Nestoroff procured a search warrant. There can be no doubt that the pistol was seized constitutionally. Indeed, even if some "taint" were to be presumed in the conduct of the inventory search, the ultimate seizure of the handgun can be upheld on the basis of myriad exceptions to the fourth amendment's general proscription. *See United States v. Miller,* 666 F.2d 991, 995–97 (5th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2043, 72 L.Ed.2d 489 (1982). Here, however, the arrest and the inventory search were legally conducted, and the warrant is legally sufficient. Accordingly, there is no fourth amendment violation.

**132**

### III. *Sufficiency of the Evidence: The Interstate Nexus*

Walden was convicted for the possession of a firearm, *i.e.,* a .25 caliber Colt semi-automatic pistol, in violation of 18 U.S.C.App. § 1202(a)(1). He now argues that the Government wholly failed to prove the "interstate commerce nexus" of the .25 caliber colt handgun, a jurisdictional prerequisite to his lawful conviction.

▮ 18 U.S.C.App. § 1202(a)(1) proscribes the possession of a firearm by a convicted felon. That section provides in terms that:

> (a) Any person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... and who *receives, possesses, or transports in commerce or affecting commerce,* after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

(emphasis added). Proof that a firearm has at some time traveled in interstate commerce is sufficient to satisfy the interstate nexus of section 1202(a)(1). *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *United States v. Stevens,* 538 F.2d 1203, 1205–06 (5th Cir. 1976); *United States v. Ransom,* 515 F.2d 885, 891 (5th Cir.1975), *cert. denied,* 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *United States v. Nuccio,* 487 F.2d 462 (5th Cir.1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974).

The Government's proof of the interstate commerce nexus rested on Nestoroff's testimony that certain Bureau of Alcohol, Tobacco & Firearms documents establish that the .25 caliber handgun was manufactured outside of the State of Texas. Viewed in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Niver,* 689 F.2d 520, 529 (5th Cir. 1982), the testimony is adequate basis for the district court's conclusion that the Government satisfied the interstate commerce nexus. *United States v. Pozos,* 697 F.2d 1238, 1241 (5th Cir.1983); *United States v. Niver,* 689 F.2d at 529.

### IV. *Conclusion*

Walden's arrest and the search and seizure of his property were accomplished in compliance with his fourth amendment rights. The jurisdictional basis for his conviction was adequately laid. Walden's conviction is affirmed.

AFFIRMED.