**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Milton OROZCO, Defendant-Appellant.**

No. 83–2062.

United States Court of Appeals, Fifth Circuit.

Sept. 2, 1983.

**159**

Lopez, Medina, Ramirez & Torres, Armando Lopez, Yolanda Navarro Flores, Houston, Tex., for defendant-appellant.

James R. Gough, W.W. Torrey, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GARZA, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Robert Orozco appeals his convictions entered on jury verdicts for receipt of a stolen vehicle in violation of 18 U.S.C. § 2313 and possession of firearms by a convicted felon in violation of 18 U.S.C. app. I § 1202(a)(1). He argues that the evidence of two weapons seized from the trunk of the car in which he was arrested should have been suppressed and that there was in any event insufficient evidence to sustain his conviction for unlawful possession of firearms. Finding the search of the truck supportable under two alternative theories, and finding sufficient evidence of Orozco's guilt, we affirm.

On Independence Day 1981, Robert Orozco and his cousin, Glenn Klonek, were travelling in a blue BMW on I–10 from Houston toward Austin. Three Texas Department of Public Safety troopers who were working radar on the highway detected that the car was speeding and gave chase. After a one to one-and-a-half mile pursuit, the BMW was pulled over. One officer approached Klonek, the driver. A second officer noticed that the Texas plate on the rear of the car appeared to have come from another vehicle. He walked around the car and saw that it had no front license plate and an Oklahoma registration sticker. He then returned to the patrol car to conduct a stolen vehicle and registration check.

Meanwhile, Officer E.W. Michalke had been standing in the "shotgun" position to the rear of the passenger side of the stopped vehicle. He saw Orozco, who was seated in the front passenger seat, open and shut the glove compartment. He testified that from his vantage point outside the vehicle he saw a baggie of marijuana in the open glove compartment. He then "confronted" Orozco and told him to reopen the glove compartment. When Orozco did so, Officer Michalke seized the package of marijuana and the paraphernalia he found inside, asked Orozco to step out of the vehicle, and placed Klonek and him under arrest.

The officers then searched the entire passenger compartment and the trunk. According to Michalke, they believed that other marijuana might be present in the vehicle. In addition, a wrecker had been called to pick up the BMW, since Klonek and Orozco were going to be taken away in the patrol car, so the officers deemed it necessary to inventory the contents of the vehicle. The search of the trunk turned up clothing, a .22 pistol, a .357 Magnum, and a package containing more than a pound of marijuana. Later that evening it was learned that the BMW had been stolen from a car dealer in Oklahoma.

Orozco was indicted for receipt of a stolen vehicle and unlawful possession of firearms. Before trial he moved to suppress the evidence of the two guns discovered in the trunk of the BMW. The district court denied the motion, ruling that the search was lawful either under the automobile exception or as an inventory search. A jury then convicted Orozco on both counts. He appeals.

Orozco contends that the search of the BMW trunk was unlawful. Specifically, he argues that the initial examination of the glove compartment was not based on probable cause because Office Michalke could not have seen the marijuana from his vantage point. In addition, assuming the lawfulness of this initial act, Orozco maintains that the automobile exception is inapplicable here because even after the marijuana and paraphernalia had been found in the glove com-

partment there was no probable cause to believe marijuana would be found elsewhere. Finally, Orozco asserts that what was intended as an investigatory search cannot be sustained through reclassification as an inventory search; thus, the alternative basis for the trial judge's ruling must fall as well. We disagree with each contention and believe that the admission of the evidence may be upheld on either of the two grounds relied upon by the district judge.

At the suppression hearing, the trial judge found, "The facts of the case at bar reveal that the officers, after viewing marijuana in the glove box of the BMW auto, had probable cause to believe that more contraband might be secreted in other portions of the car." Orozco claims that Officer Michalke could not have actually seen a baggie of marijuana in the glove compartment from the shotgun position outside the BMW. While we note that in the Fourth Amendment context law enforcement officers have occasionally claimed to have AWACS-like visual acuity, see *United States v. Rivera*, 486 F.Supp. 1025, 1035 (N.D.Tex.1980) (DEA agent claimed to have spotted two marijuana leaves and three to five seeds in a trunk of a Cadillac stopped at night), we think that this one was simply a credibility call for the trial judge, and he made it in favor of Officer Michalke. We read his findings to be that Officer Michalke observed the marijuana *before* directing Orozco to open the glove compartment. While the oral finding is, when read out of context, inexact, there is no dispute that Officer Michalke saw marijuana *after* opening the glove compartment, so there was no need for any other finding on this point.[1]

Once he had observed the marijuana, Officer Michalke unquestionably had the authority to look into the glove compartment and to arrest Orozco. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Michigan v. Long*, —— U.S. at —— n. 1, 103 S.Ct. at 3473 n. 1. The next issue is whether, as the trial court found, the totality of the circumstances then furnished probable cause for the search of the trunk.

■ Under *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), when a car has been legitimately stopped and there is probable cause to believe it contains contraband, the police may conduct a probing search of all areas of the car and containers that might hold the contraband. Orozco argues that the Texas troopers lacked probable cause to believe the trunk of the BMW contained more marijuana. We disagree. Probable cause is the "sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers." *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir.1983) (quoting earlier case). "Each individual layer of information is not to be weighed. Rather, the 'laminated total' of the facts available is the source of the justification for a vehicle search without a warrant." *Id.*

■ Here the officers had available to them the following facts: (1) there was marijuana in the glove compartment; (2) there was drug paraphernalia in the glove compartment; (3) the license plate on the car did not match the registration and checked out to a 1975 Oldsmobile owned by Orozco's sister—thus presenting a strong possibility that the BMW was stolen. These circumstances, we believe, were "sufficient to warrant 'men of reasonable caution,'" *United States v. Shaw*, 701 F.2d at 378, to conclude that the trunk contained additional marijuana, which in fact it did.[2]

---

1. We thus need not decide whether the search of the glove compartment could be sustained as a protective frisk based on specific and articulable facts reasonably warranting a belief that Orozco was dangerous and could get immediate control of a weapon. *Michigan v. Long*, —— U.S. ——, ——, 103 S.Ct. 3469, 3479, 77 L.Ed.2d 1201 (1983).

2. A leading commentator has pointed out that in the automobile context, courts have not always required that the object of the warrantless search be particularized to the extent required elsewhere. 2 W. LaFave, Search and Seizure § 7.2(d) (1978). Regardless, the object of the search of the trunk—marijuana—was quite definite here.

The trial judge also ruled that the inspection of the trunk was a valid inventory search. In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court held that "a caretaking search of a lawfully impounded automobile" pursuant to a "standard procedure" was reasonable under the Fourth Amendment. Here there is no dispute that—Klonek and Orozco having been arrested—the car was about to be towed away and that it was customary to inventory the contents of the vehicle beforehand. The inventory search was therefore proper. *See United States v. Walden,* 707 F.2d 129, 131 (5th Cir.1983).

Orozco argues that a search cannot be simultaneously for investigatory and inventory purposes. In *Opperman,* the Supreme Court stressed, "[T]here is no suggestion that this standard procedure ... was a pretext concealing an investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100. But nothing in *Opperman* indicates that a search may not be upheld on "inventory" grounds so long as that was *one* of the police motives. The trial court made such a finding, and it is supported by the record. Thus, we conclude that the search of the trunk was lawful, and evidence concerning the .357 Magnum and the .22 pistol was properly admitted.

Orozco also urges that the evidence was insufficient to sustain his conviction for unlawful possession of firearms. In particular, he contends that there was no evidence tying him to the .357 Magnum. Orozco's argument is bogus. "Constructive possession may be inferred from the ownership, or the exercise of dominion or control of the vehicle in which the contraband is concealed." *United States v. Freeze,* 707 F.2d 132, 135 (5th Cir.1983). Testimony at trial indisputably established Orozco's dominion and control over the stolen BMW, which was being kept at his house, up to the time of the stop and arrest.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.