**Billy Conrade ALSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–218–CR.**

Court of Appeals of Texas,
Beaumont.

Dec. 28, 1988.

Veryl E. Brown, Liberty, for appellant.

Jerry E. Andress, Liberty, for appellee.

OPINION

BURGESS, Justice.

Appellant was charged by separate indictments with burglary of a motor vehicle and aggravated robbery. Each indictment also alleged at least two prior convictions. A companion, Donald Ray Weller, was also charged in separate indictments with the same offenses, and each indictment also alleged at least two prior convictions. By agreement, the four cases were all tried before the same jury. The jury found the defendants "not guilty" of the aggravated robbery, but "guilty" of burglary of a motor vehicle. The court found the enhancement portions of each indictment to be "true" and assessed each defendant's punishment at thirty years' confinement in the Texas Department of Corrections. Appellant alleges four points of error.

The first two points of error allege the evidence is insufficient to support a conviction for burglary of a vehicle because "appellant introduced evidence of a reasonable hypothesis of innocence" and "the evidence shows that the burglary was completed before the appellant did any act to aid, assist, encourage, or attempted to aid ... in the commission of the offense."

The complainant, Ruth Cargill, testified that on the evening of August 24, 1986, she drove her 1979 Datsun station wagon to a location on the Trinity River in Liberty County. She joined some friends for a party. Her friends left and she was alone for a short time. Then appellant and three companions, Eddie Hartless, Eugene Stevens and Donald Ray Weller, arrived. Shortly after their arrival, appellant began making advances toward Ms. Cargill. Ms. Cargill resisted, but appellant persisted. During the episode, all four men took beer from a cooler which had been left with Ms. Cargill. As the evening progressed, the men would periodically leave the site, but only two at a time. At one point, appellant and Weller left and Weller returned with a gun. The men would huddle and leave, but each time, two would remain. At one point, Ms. Cargill became aware that Hartless had obtained the keys to her car and refused to return them. During the last

time when appellant and Weller were gone, the other two attempted to disrobe Ms. Cargill and threatened to sexually assault her. Upon their return, appellant ordered Stevens and Hartless to stop and stated, "We have what we want." The men left the river area between 10:30 and 11:00 p.m. Subsequently, Ms. Cargill discovered her vehicle had been burglarized and notified the sheriff's department.

At approximately 11:40 p.m., a City of Dayton police officer noticed a pickup truck which made a left turn without signalling. There were three people in the cab of the truck and one person in the bed. The officer stopped the truck and asked the driver for his driver's license. The driver, Weller, could not produce a valid driver's license and was arrested for that offense. Appellant then got out of the cab of the truck, and the officer arrested him for being intoxicated. By this time, other officers had arrived to assist and began to inventory the pickup prior to its impoundment. They found a sawed-off rifle in a cooler in the bed. Upon discovering the sawed-off rifle, the officers arrested Hartless, who was in the cab and Stevens who was in the bed of the truck. The first officer testified that at the time he stopped the pickup truck, he had no knowledge of the alleged burglary of Ms. Cargill's vehicle. After the four men were arrested, the items from Ms. Cargill's station wagon were discovered in the bed of the pickup. The items were identified by Ms. Cargill later that evening and the next day. At the time of their arrests, none of the individuals gave any explanation concerning the property. At trial, Eugene Stevens testified that he alone burglarized the station wagon and the others knew nothing about it. He also denied any harassment or intimidation of Ms. Cargill, alleging it was Ms. Cargill who was making physical advances toward the men. Gary Coward, a relative of Stevens, testified he helped Stevens burglarize the vehicle. Neither appellant nor Weller testified.

■■■ The standard for reviewing both direct and circumstantial evidence cases is to view the evidence in a light most favor-

able to the verdict to determine whether any rational trier of fact could find all the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984). Mere presence at the scene will not make one a party. It is, however, a circumstance tending to prove that a person is a party and, taken with other facts, may be sufficient to show that an accused was a participant. *Medellin v. State*, 617 S.W.2d 229, 231 (Tex.Crim.App.1981). Participation in a criminal enterprise may be inferred from the circumstances. *Freeman v. State*, 654 S.W.2d 450, 454 (Tex.Crim.App.1983). Furthermore, one may look to events before, during and after the commission of an offense to determine whether an individual is a party to that offense. *Phelps v. State*, 730 S.W.2d 198, 200 (Tex.App.—San Antonio 1987, no pet.). In determining whether one participated as a party, reliance may be placed on actions which show an understanding and common design to do a certain act. *Gutierrez v. State*, 628 S.W.2d 57, 67 (Tex.Crim.App.1982) (on rehearing).

■ The jury was not bound to accept the explanation offered by Stevens as to how the vehicle was burglarized and the stolen property got into the pickup truck. *Jackson*, 672 S.W.2d at 804. They certainly were entitled to consider Stevens' past criminal record and his relationship to the defendants in evaluating his credibility. *Durant v. State*, 688 S.W.2d 265, 267 (Tex.App.—Forth Worth 1985, pet. ref'd). We find the evidence sufficient to sustain appellant's conviction as a party. *See Markham v. State*, 751 S.W.2d 190 (Tex.Crim.App.1988). Points of error one and two are overruled.

■ The next point of error complains the trial court erred in admitting the evidence concerning the sexual assault and threats made by Hartless and Stevens against Ms. Cargill. We disagree. The defendants were also being tried for aggravated robbery. The state was entitled to put on evidence of all the events that occurred at the river that evening in an attempt to prove the elements of that offense. This point is overruled.

■ The final point of error alleges the court erred in overruling the motion to suppress the fruits of the stop and search of the vehicle. Appellant's argument focuses on the items taken from Ms. Cargill. The officer testified he stopped the pickup truck for a traffic violation and arrested Weller for operating a vehicle without a valid driver's license. He then arrested appellant for public intoxication. All this was done without any knowledge of the incident involving Ms. Cargill. The items were found as a result of an inventory of the pickup prior to impoundment. This was proper. *United States v. Orozco*, 715 F.2d 158, 161 (5th Cir.1983); *see also Robertson v. State*, 541 S.W.2d 608 (Tex.Crim. App.1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1145, 51 L.Ed.2d 563 (1977). Point of error number four is overruled. The judgment is affirmed.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

The Appellant argues that reversible error was committed by the district court in overruling the Appellant's motion to suppress certain fruits of the stop and the search of a truck. He basically argues that his fourth amendment rights to be protected against unreasonable search and seizures were violated. Of course, Appellant refers to the Fourth Amendment in the Bill of Rights of the United States Constitution.

Late at night on August 24, 1986, a peace officer who was an employee of the Dayton Police Department was positioned near an intersection of two major highways. This intersection was controlled by a traffic light. The peace officer observed a green pick-up truck making a left turn, but failing to give a proper signal for such turn. This haphazard driving alerted the officer who then followed the truck. The officer observed that there were four persons in the truck. He was able to note and to read the license plate number. Earlier in the evening this same peace officer had received information to be on the alert and on the look-out for a vehicle bearing the

same license plate number. The officer stopped the truck. The officer had a conversation with the driver who was identified as Donald Ray Weller. Weller possessed no valid driver's license. Weller was then placed under arrest.

Then another co-defendant, Billy Conrade Alston, debarked from the passenger's compartment. From the officer's observation of Alston it was determined that Alston was intoxicated. Alston's arrest followed. Shortly thereafter, two other peace officers arrived to assist the first peace officer. One of the officers inspected the passenger compartment as well as the bed of the truck for the purposes of making an inventory. During this preliminary investigation, one of the officers noticed certain items of property in the bed of the truck. This same property was identified later by the complainant, Ms. Ruth Cargill, as being her property. Some of the items found in the truck were four bottles of tablets and a sawed-off shotgun. Upon discovery of the sawed-off shotgun, the other passengers Hartless and Stevens were arrested. Stevens had been riding in the bed of the truck as a passenger.

Arrangements were made for impounding the vehicle. These arrangements for impounding authorized the officers to conduct an inventory search of the vehicle. *U.S. v. Orozco*, 715 F.2d 158 (5th Cir.1983).

The inventory of the vehicle was lawful and proper for another reason. *United States v. Prescott*, 599 F.2d 103 (5th Cir. 1979). In *Prescott*, the court concluded that a peace officer may lawfully conduct an inventory investigation of a vehicle while the same is still on the highway awaiting impoundment. This inventory investigation or search is a necessary precaution to protect the property therein and to protect the arresting officer or officers as well as the public and wrecker service employees against claims or disputes over lost or stolen property and from potential danger. See *Robertson v. State*, 541 S.W.2d 608 (Tex.Crim.App.1976), *cert. denied* 429 U.S. 1109, 97 S.Ct. 1145, 51 L.Ed.2d 563 (1977). A sawed-off shotgun was seen and recovered from the truck. Hence, the

search to remove weapons or instruments capable of physical harm to the peace officers during an investigatory encounter is proper under the Fourth Amendment. Further, this procedure preserves evidence or demonstrative evidence taken during such a search. Weapons discovered during an investigatory search are usually admissible in a subsequent criminal prosecution. *U.S. v. Edwards*, 469 F.2d 1362 (5th Cir. 1971).

Furthermore, a warrantless arrest and a warrantless search of the passenger compartment as well as other areas available and accessible to the driver or occupant of an automobile or truck are valid under the Fourth Amendment as a contemporaneous incident to a lawful stop and arrest of the driver and of the occupants. One of the passengers or riders in the truck was riding in the bed of the truck. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The bed of the truck was under the control or within the reach of at least one of the arrestees. The sawed-off shotgun was in a container. It was proper to examine the contents of such container. *New York v. Belton, supra*. The peace officers acted reasonably under the surrounding facts and circumstances.

The bed of the truck was being used as a passenger compartment on the occasion in question. The bed was occupied by a passenger or rider. Since there was a lawful stop and arrest, then as a contemporaneous incident of that lawful arrest, a search of the bed of the truck where a passenger was riding and an examination of the container which contained the sawed-off shotgun was not a violation of the Fourth Amendment. A container is any object capable of holding another object including such places as open or closed glove compartments, consoles, or other receptacles as well as luggage, boxes, bags, clothing and similar articles. *New York v. Belton, supra*.

For these additional reasons I wholeheartedly concur.