Donald Ray **WELLER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–87–214–CR.

Court of Appeals of Texas,
Beaumont.

Jan. 11, 1989.

Mark Morefield, Veryl E. Brown, Liberty, for appellant.

Jerry E. Andress, Liberty, for appellee.

## OPINION

BURGESS, Justice.

Appellant was charged by separate indictments with burglary of a motor vehicle and aggravated robbery. Each indictment also alleged at least two prior convictions. A companion, Billy Conrad Alston, was also charged in separate indictments with the same offenses, and each indictment also alleged at least two prior convictions. By agreement, the four cases were all tried before the same jury. The jury found the defendants "not guilty" of the aggravated robbery, but "guilty" of burglary of a motor vehicle. The court found the enhancement portions of each indictment to be "true" and assessed each defendant's punishment at thirty years' confinement in the Texas Department of Corrections. Appellant alleges four points of error.

The first two points of error allege the evidence is insufficient to support a conviction for burglary of a vehicle because "appellant introduced evidence showing a reasonable hypothesis of innocence" and "the evidence shows that the burglary was completed before the appellant did any act to aid, assist, encourage, or attempted to aid ... in the commission of the offense."

The complainant, Ruth Cargill, testified that on the evening of August 24, 1986, she drove her 1979 Datson station wagon to a location on the Trinity River in Liberty County. She joined some friends for a party. Her friends left and she was alone for a short time. Then appellant and three companions, Eddie Hartless, Eugene Stevens and Billy Conrade Alston, arrived. Shortly after their arrival, Billy Alston began making advances toward Ms. Cargill. Ms. Cargill resisted, but Alston persisted. During the episode, all four men took beer from a cooler which had been left with Ms. Cargill. As the evening progressed, the men would periodically leave the site, but only two at a time. At one point, appellant and Alston left and appellant returned with a gun. The men would huddle and leave, but each time, two would remain. At one point, Ms. Cargill became aware that Hartless had obtained the keys to her car and refused to return them. During the last time when appellant and Alston were gone, the other two attempted to disrobe Ms. Cargill and threatened to sexually assault her. Upon their return, Alston ordered Stevens and Hartless to stop and stated, "We have what we want." The men left the river area between 10:30 and 11:00 p.m. Subsequently, Ms. Cargill discovered her vehicle had been burglarized and notified the sheriff's department.

At approximately 11:40 p.m., a City of Dayton police officer noticed a pickup truck which made a left turn without signalling. There were three people in the cab of the truck and one person in the bed. The officer stopped the truck and asked appellant, the driver, for his driver's license. Appellant could not produce a valid driver's license and was arrested for that offense. Alston then got out of the cab of the truck, and the officer arrested him for being intoxicated. By this time, other officers had

arrived to assist and began to inventory the pickup prior to its impoundment. They found a sawed-off rifle in a cooler in the bed. Upon discovering the sawed-off rifle, the officers arrested Hartless, who was in the cab and Stevens who was in the bed of the truck. The first officer testified that at the time he stopped the pickup truck, he had no knowledge of the alleged burglary of Ms. Cargill's vehicle. After the four men were arrested, the items from Ms. Cargill's station wagon were discovered in the bed of the pickup. The items were identified by Ms. Cargill later that evening and the next day. At the time of their arrests, none of the individuals gave any explanation concerning the property. At trial, Eugene Stevens testified that he alone burglarized the station wagon and the others knew nothing about it. He also denied any harassment or intimidation of Ms. Cargill, alleging it was Ms. Cargill who was making physical advances toward the men. Gary Coward, a relative of Stevens, testified he helped Stevens burglarize the vehicle. Neither appellant nor Alston testified.

■ The standard for reviewing both direct and circumstantial evidence cases is to view the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find all the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984). Mere presence at the scene of the offense will not make one a party. It is, however, a circumstance tending to prove that a person is a party and, taken with other facts, may be sufficient to show that an accused was a participant. *Medellin v. State*, 617 S.W.2d 229, 231 (Tex.Crim.App. 1981). Participation in a criminal enterprise may be inferred from the circumstances. *Freeman v. State*, 654 S.W.2d 450, 454 (Tex.Crim.App.1983). Furthermore, one may look to events before, during and after the commission of an offense to determine whether an individual is a party to that offense. *Phelps v. State*, 730 S.W.2d 198, 200 (Tex.App.—San Antonio 1987, no pet.). In determining whether one participated as a party, reliance may be placed on actions which show an understanding and common design to do a certain act. *Gutierrez v. State*, 628 S.W.2d 57, 67 (Tex.Crim.App.1982) (on rehearing).

■ The jury was not bound to accept the explanation offered by Stevens as to how the vehicle was burglarized and the stolen property got into the pickup truck. *Jackson*, 672 S.W.2d at 804. They certainly were entitled to consider Stevens' past criminal record and his relationship to the defendants in evaluating his credibility. *Durant v. State*, 688 S.W.2d 265, 267 (Tex. App.—Fort Worth 1985, pet ref'd). We find the evidence sufficient to sustain appellant's conviction as a party. *See Markham v. State*, 751 S.W.2d 190 (Tex.Crim. App.1988). Points of error one and two are overruled.

■ The next point of error complains the trial court erred in admitting the evidence concerning the sexual assault and threats made by Hartless and Stevens against Ms. Cargill. We disagree. The defendants were also being tried for aggravated robbery. The state was entitled to put on evidence of all the events that occurred at the river that evening in an attempt to prove the elements of that offense. This point is overruled.

■ The final point of error alleges the court erred in overruling the motion to suppress the fruits of the stop and search of the vehicle. Appellant's argument focuses on the items taken from Ms. Cargill. The officer testified he stopped the pickup truck for a traffic violation and arrested appellant for operating a vehicle without a valid driver's license. This was done without any knowledge of the incident involving Ms. Cargill. The items were found as a result of an inventory of the pickup prior to impoundment. This was proper. *United States v. Orozco*, 715 F.2d 158, 161 (5th Cir.1983); *see also Robertson v. State*, 541 S.W.2d 608 (Tex.Crim.App.1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1145, 5 L.Ed.2d 563 (1977). Point of error number four is overruled. The judgment is affirmed.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

The Appellant, Donald Ray Weller, was indicted for the offense of burglary of a vehicle; he was also charged with aggravated robbery allegedly occurring on the same day. *The Appellant contends that the district court committed reversible error in failing to suppress the fruits of a stop and inventory search of a truck.* Appellant concedes that the complainant, who was a 59 year old woman, discovered that the battery was missing from her car, a 1979 Datsun. Also missing from her Datsun were certain tire tools, jumper cables, and a second beverage cooler. In the late evening of August 24, 1986, an officer, with the Dayton Police Department, stopped a green truck for a traffic violation. Appellant Weller was driving the truck. Appellant concedes that there were riders or passengers in the cab and in the truck bed of the green truck. In the truck bed, the Dayton police officer found the complainant's battery, jumper cables and cooler.

The Appellant was arrested for driving without a driver's license. The Appellant's brief admits:

"The jury was authorized to convict the appellant as a principal or under the law of parties. The jury found the appellant guilty of burglary."

Most of the above-described stolen property of the complainant was discovered in plain view in the bed of the truck which Weller was driving. Prior to stopping the truck, the Dayton police officer actually observed four persons in the truck, three riders being in the passenger compartment and one rider being in the bed. The officer noted the license plate number and earlier in the evening of August 24, 1986, the same officer had received information to be on the lookout for a truck bearing that identical license plate number.

The Dayton policeman was able to identify the driver of the truck as Donald Ray Weller; the policeman also correctly determined that Weller possessed no valid driver's license. At that time the Appellant was arrested. Two additional officers arrived as back-up personnel. The items of property in the bed of the truck were open to the view of Weller as well as the peace officers. Weller's co-defendant, Billy Conrade Alston, had exited from the passenger compartment. The Dayton policemen observed Alston's behavior and, formed a firm opinion that Alston was intoxicated. Then Alston was arrested. A long gun, a sawed-off rifle, was discovered in the bed; the other passengers were arrested.

Officer Britt Hall then inspected the passenger compartment and also the bed of the truck for the purposes of making an inventory prior to having the vehicle impounded by P & B Salvage Company. The impoundment was necessary under the circumstances. During this pre-impoundment inventory Officer Hall noticed several items of property in plain, open view in the bed of the truck. This same property was subsequently identified on August 25, 1986, by the complainant, Ruth Cargill, as her property.

Officer Britt Hall lawfully stopped the green truck. He actually observed this vehicle and its driver committing a traffic violation. Since the four were under arrest and the green truck was on the highway, it became necessary to make arrangements for the impoundment of the vehicle. *Daniels v. State,* 600 S.W.2d 813 (Tex.Crim. App.1980). This necessary, pending impoundment empowered the officers to conduct an inventory of the truck. *U.S. v. Orozco,* 715 F.2d 158 (5th Cir.1983). During the inventory of the bed of the truck where one of the passengers had been riding, Officer Hall discovered a sawed-off rifle in a container. *Wooldridge v. State,* 696 S.W.2d 252 (Tex.App.—San Antonio 1985, pet. ref'd); *Mayhood v. State,* 669 S.W.2d 873 (Tex.App.—Corpus Christi 1984, pet. ref'd).

The Supreme Court of the United States has recognized three different legitimate purposes for inventory searches: one, for the protection and preservation of personal property which may be located in the vehicle; two, for the protection of the police against claims arising from contentions that property was allegedly lost or stolen or misplaced while the vehicle was in the

custody of the police; three, the protection of the police or peace officers from possible unforeseen dangers contained within and arising from within the vehicle, such as concealed weapons. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Our Court of Criminal Appeals has recognized and applied approvingly the concept of these types of inventories as an inventory search conducted incident to arrest. *See Backer v. State*, 656 S.W.2d 463 (Tex.Crim.App.1983); *Gary v. State*, 647 S.W.2d 646 (Tex.Crim.App. 1983). Hence, the inventory draws its validity from the police officer's caretaking duty of a truck or vehicle. Once the Appellant here and the riders were arrested, the policeman's administrative, caretaking function began. *Evers v. State*, 576 S.W. 2d 46 (Tex.Crim.App.1978). On this inventory issue, the Appellant states: "Appellant had a Fourth Amendment protected right against unreasonable searches and seizures." I perceive this inventory was not unreasonable; it did not violate the Fourth Amendment.

The Appellant brings forward an interesting ground of error averring that reversible error was committed when the trial court allowed evidence of extraneous offenses before the jury. These extraneous offenses involved the complainant and one Hartless and one Stevens when Weller was not actually present at the scene nor did Weller assist in the commission of the extraneous offenses. At the threshold, it should be remembered that Weller had three companions, namely: Billy Conrade Alston, Eddie Hartless and Eugene Stevens. Shortly after the arrival of the four, according to this record, Alston began making certain advances toward Ruth Cargill. She successfully resisted Alston's advances but, nevertheless, Alston tried to persist. During this encounter the four protagonists took beer from a cooler which had been left in the possession and custody of Ms. Cargill, the complainant. As time progressed, two of the protagonists would periodically leave the scene and the presence of Ms. Cargill. But only two of them would leave at one time. Then the two that had left would return and the two that

had remained would leave. This "changing of the guard" took place more than once.

After Weller and Alston had left, they returned and Appellant Weller, upon his return, had in his possession a gun.

The four protagonists would huddle, confer, and then two of them leave on each occasion, but two would remain on each occasion. As the time advanced, Ms. Cargill discovered that Hartless had taken the keys to her Datsun. Hartless refused to return the keys to her. During the last time that Weller and Alston left the presence of the complainant, Hartless and Stevens made an attempt to disrobe Ms. Cargill and one of them threatened to assault her sexually. There is evidence in the record that Harless first grabbed Ms. Cargill and then later he grabbed her by the throat. Stevens started pulling off her clothes and Hartless profanely announced his intention to sexually violate the complainant. Weller argues that this evidence, alone, of these extraneous offenses requires a reversal of the judgment. Ms. Cargill testified that as Weller and Alston were walking off, both Hartless and Stevens grabbed her. Cargill swore that Hartless clearly declared, more than once, his intention to sexually assault her.

The conferences of the protagonists and their discussions and huddles and the actions and statements of Stevens and Hartless were considered as a part of the criminal transaction and as res gestae by the trial court. The trial judge stated the prosecution had shown a conspiracy. After Hartless had declared his individual intention to f_____ the complainant to death, Hartless stated again to Cargill that they (apparently including Stevens) were going to "f_____ me to death." Then when they, apparently meaning Stevens and Hartless, got through, the other two protagonists were going to do the same thing. I think the trial court's position was correct. Ms. Cargill further testified that during or very shortly after the profane statements of Hartless, Alston returned and told Stevens and Hartless to definitely leave the woman alone since Alston and Weller had what they wanted.

Under this record, I think *TEX.R.CRIM. EVID. 404(b)* permits such evidence and testimony as being admissible before the jury showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of a mistake or absence of an accident. I deem the trial court's rulings correct in permitting this evidence before the jury for the reason that the sexual offenses complained of were committed by a co-conspirator in a criminal prosecution that involved considerable circumstantial evidence. When the prosecution's case is dependent upon the circumstances surrounding the offense the Rules of Evidence concerning admissibility are not so stringently applied so as to exclude evidence which sheds relevant and important light on the entire occurrence. The jury cannot intelligently pass on the case in a vacuum. *Bailey v. State,* 532 S.W.2d 316 (Tex.Crim. App.1975). This evidence was also within *the co-conspirator exception to the hearsay rule.* Apparently, this co-conspirator exception was not recognized by the Appellant. This co-conspirator exception is reasonably broad in the scope of its application. It is not restricted only to prosecutions for the conspiracy itself. The rule is applicable to any criminal offense precipitated by and participated in by a co-conspirator. Indeed, each act or statement of a co-conspirator until the object of the conspiracy is completed is admissible; and this concept of admissibility is correct even though the acts or statements of the co-conspirator were said or performed outside of the presence or hearing of the accused. *Hadley v. State,* 735 S.W.2d 522 (Tex.App. —Amarillo 1987, pet. ref'd); *Ruiz v. State,* 698 S.W.2d 405 (Tex.App.—Corpus Christi 1985, no pet.); *Crisp v. State,* 643 S.W.2d 487 (Tex.App.—Austin 1982, pet. granted), *affirmed on other grounds,* 661 S.W.2d 944 (Tex.Crim.App.1983), *opinion on motion for rehearing,* 661 S.W.2d 956.

Under the unusual record of the appeal at bar, I think it was a jury question as to whether or not the statements and the acts of the co-conspirators were actually finished and concluded outside of the presence, hearing or knowledge of the Appellant. It must be borne in mind that Weller and Alston were tried jointly and each was charged also with aggravated robbery. Hence, this evidence was relevant to that offense and to certain of the elements thereof.

Moreover, whether a facet of evidence is relevant to any issue of either one of the indicted offenses lies within the sound discretion of the trial court. There was no abuse of the trial court in admitting the words and actions of Hartless and Stevens. *Johnson v. State,* 698 S.W.2d 154 (Tex. Crim.App.1985); *Williams v. State,* 535 S.W.2d 637 (Tex.Crim.App.1976). An interesting case is *May v. State,* 618 S.W.2d 333 (Tex.Crim.App.1981). In *May* the Court wrote that where there is sufficient evidence to raise the issue of a conspiracy then hearsay acts and hearsay statements of a conspirator which were made or performed prior to the actual time that the object of the conspiracy was fully completed are admissible and these acts and words are admissible even though the same occurred outside the presence and the hearing of the co-conspirator who is actually on trial. *Sherwood v. State,* 732 S.W.2d 787 (Tex.App.—Fort Worth 1987, no pet.). The trial court clearly held in this record that prior to the introduction and admissibility before the jury of the challenged evidence, the State had established the existence of a conspiracy among the four protagonists. It is rare, of course, that a conspiracy can be shown by direct and positive evidence. Hence, it is legitimate, proper and necessary to resort to circumstantial evidence to prove the existence of a conspiracy. *See Burkhalter v. State,* 655 S.W.2d 215 (Tex. App.—Corpus Christi 1982), *pet. dism'd per curiam,* 655 S.W.2d 208 (Tex.Crim. App.1983).

Furthermore, this phase of the evidence was correctly admitted before the jury for an additional reason. This string of evidence is clearly part and parcel of the entire transaction or occurrence or series of criminal activities. It was res gestae. Virtually the totality of facts and circumstances that are attendant and surround the offenses are admissible before the jury so the jury can correctly pass upon the

issue of the guilt or innocence of the accused at the bar of justice. *Williams v. State, supra; Burns v. State*, 556 S.W.2d 270 (Tex.Crim.App.1977). The words spoken and the acts performed and other facts and circumstances that surround, buttress up and add to the completion of a crime are certainly admissible on the question of guilt, if any, or the lack of guilt, of the accused. These matters are also admissible to reveal to the jury the intent and the nature and depth of the intent and the nature and gravity of the crime itself so that the jury may correctly and intelligently discharge its several duties, including the assessing of just punishment. *Webb v. State*, 480 S.W.2d 398 (Tex.Crim.App.1972); *Vavra v. State*, 171 Tex.Cr.R. 24, 343 S.W. 2d 709 (1961).

A logical analysis of this entire record in the appeal at bar discloses that the transactions of Hartless and Stevens and their acts and their words were part and parcel of one continuous transaction and on-going criminal episode and they were closely interwoven and intertwined with the indicted offenses against Weller. Hence, this concurrence is to register additional reasons for overruling the Appellant's third point of error, upon which he invested major reliance.