**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Charles PRESCOTT,
Defendant-Appellant.**

**No. 78–5781
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 20, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

John H. Miller, Jr., Wm. G. Burnett, Sinton, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The appellant Billy Charles Prescott was convicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. App. § 1202(a)(1). The sole issue on appeal is whether the firearm that formed the basis of the prosecution was the product of an illegal search of the appellant's vehicle.

On the night of July 10, 1977, Officer Alan W. Ellidge of the Portland, Texas police force observed a car operating erratically on U.S. Highway 181 in Portland. After following the weaving vehicle for about two miles, Ellidge stopped the car. The vehicle was an "El Camino" style car with only one passenger seat and a flatbed in the rear, like a pickup truck. The driver and two passengers were inside. The entire inside of the vehicle was illuminated by the patrol car's search light. Billy Prescott, the driver, smelled strongly of alcohol and had slurred speech. When he refused to take a breathalyzer test, he was placed under arrest for driving while intoxicated, and taken handcuffed to Ellidge's patrol car. Ellidge returned to Prescott's car to see if either of the other two passengers could safely drive it. When the two turned out to

be visibly inebriated Ellidge placed them under arrest for public drunkenness and took them to the squad car to join Prescott. As the two passengers exited the vehicle, a pistol and several bullets came into plain view. Once all three of the car's occupants were secure in the police car, Ellidge returned to Prescott's vehicle and seized the pistol and bullets. On examination, the pistol turned out to be a blank starter's pistol, which did not match the live .30 caliber ammunition. Suspicious that another firearm matching the .30 caliber bullets was inside the car, Ellidge looked behind the driver's seat into the open storage space between the seat and the rear of the cab. There lying ajar was a suitcase with the butt of a pistol exposed. Ellidge removed the pistol, a .30 caliber semi-automatic Universal Enforcer. As the seizure was being made, another patrol car arrived on the scene and a wrecker service was called to tow the Prescott vehicle.

The district court upheld the warrantless search of the car on the alternative grounds that it was supported by probable cause coupled with exigent circumstances and that it was a valid inventory search of the vehicle. The appellant argues first that no probable cause existed because the officer had no reason to believe that if a firearm was present in the car, its presence was illegal, and second that the search was not a valid inventory search because there was no evidence that the Portland police department conducted inventory searches as a matter of routine procedure. We affirm the conviction.

■ The fourth amendment proscribes only unreasonable searches and seizures. *South Dakota v. Opperman,* 428 U.S. 364, 371–72, 96 S.Ct. 3092, 3098, 49 L.Ed.2d 1000 (1976); *United States v. Gravitt,* 484 F.2d 375, 376 (5th Cir. 1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974). To be reasonable a search must normally be conducted pursuant to a warrant, but courts have long recognized an exception to the warrant requirement for so-called "inventory searches" of automobiles. *See generally South Dakota v. Op-*

*perman, supra,* 428 U.S. 364, 96 S.Ct. 3092; *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *United States v. Edwards,* 577 F.2d 883, 893–95 (5th Cir. 1978) (en banc).

■ It is increasingly common practice for police to conduct inventory searches of vehicles incident to their impoundment. *United States v. Piatt,* 576 F.2d 659, 661 (5th Cir. 1978). Inventory searches protect the vehicle and its contents, safeguard the police against claims of lost property, and protect the police and public from possible danger. *United States v. Edwards, supra,* 577 F.2d at 893; *United States v. Ducker,* 491 F.2d 1190, 1192 (5th Cir. 1974). Police may lawfully conduct such searches while the vehicle is still on the highway awaiting towing, a precaution that may be necessary to protect the property, the police or the public while the vehicle is abandoned, or even while it is being towed. *See United States v. Piatt, supra,* 576 F.2d at 661 n. 1; *United States v. Hall,* 565 F.2d 917, 922 (5th Cir. 1978); *United States v. Wade,* 564 F.2d 676, 677 (5th Cir. 1977).

■ Inventory searches must be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible. *United States v. Edwards, supra,* 577 F.2d at 893–94; *United States v. Gravitt, supra,* 484 F.2d at 380. Pointing to Officer Ellidge's testimony that he searched the car because he suspected that a firearm was present, and to the lack of direct evidence that inventory searches were "standard practice" with the Portland police department, the appellant claims that Officer Ellidge's search cannot qualify as a valid inventory search. The appellant's arguments are misplaced.

Turning first to the scope of the officer's search, his intrusion was so minor that it barely warrants characterization as a search at all. The entire inside of the El Camino was illuminated by the light from Ellidge's squad car. To view the partially open suitcase with the pistol butt exposed, Officer Ellidge had only to peer into the area be-

hind the front seat. Ellidge's search was far less intrusive than the examination of the glove compartment, trunk, floor and area beneath the seats that was approved as permissible for routine inventory searches in *United States v. Edwards*, 577 F.2d at 894.

■ If an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found. *United States v. Ducker, supra*, 491 F.2d at 1192. Although evidence that inventory searches are standard practice at a given police department is a strong indicator that a particular search was conducted for legitimate purposes, it is not an absolute prerequisite to such a finding. Such evidence is "a factor tending to ensure that the intrusion will be limited in scope to the extent necessary to carry out the caretaking function," *South Dakota v. Opperman, supra*, 428 U.S. at 375, 96 S.Ct. at 3100; *United States v. Edwards, supra*, 577 F.2d at 893, n. 22, but the reasonableness of a particular inventory procedure may be obvious even in the absence of direct evidence concerning a police department's standard procedures Officer Ellidge's action was "standard police practice" in the sense that it was of the type that has been repeatedly recognized by the courts as efficacious and constitutionally reasonable. More importantly, however, it was action necessitated by special concerns for public safety.

Local police officers come into frequent contact with motor vehicles and often engage in what the Supreme Court has called "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. at 441, 93 S.Ct. at 2528. In *Cady* the Supreme Court approved an inventory search initiated on the assumption of local police that the incapacitated driver removed from his vehicle, who claimed to be a Chicago police officer, may have left behind a service revolver. The court recognized the legitimate police concern "for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of a vehicle." 413 U.S. at 447, 93 S.Ct. at 2531.

In the instant case, the blank pistol and live ammunition which were in Ellidge's plain view gave him ample reason to suspect the presence of what has been called the "volatile mixture" of alcohol, automobile and firearms. *United States v. Piatt, supra*, 576 F.2d at 661. "[V]arious possible combinations of liquor, car and guns posed threats to highway safety and to the community at large that a peace office neither could nor should ignore." *United States v. Boyd*, 530 F.2d 1269, 1270 (5th Cir. 1976). Whether or not an inventory search would routinely be conducted by a Portland police officer after apprehending a drunken driver, the probable presence of a firearm within the vehicle made Officer Ellidge's efforts to secure the gun imperative. *United States v. Ullrich*, 580 F.2d 765, 771 (5th Cir. 1978); *United States v. Piatt, supra*, 576 F.2d at 661.[1] Far from violating the fourth amendment, Officer Ellidge's cursory search was sound, common sense police work that reason commends rather than condemns.

AFFIRMED.

---

1. Even the Ninth Circuit, which applies a strict rule that inventory searches must be supported by evidence that they are standard practice at the specific police department involved, would provide an exception to that rule when circumstances such as the presence of a pistol warrant "safeguarding or security precautions that are not customarily taken." *United States v. Hellman*, 556 F.2d 492, 444 and n. 4 (9th Cir. 1977).