**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph Scott LAING, Defendant-Appellant.**

**No. 81–5202.**

United States Court of Appeals, Eleventh Circuit.

May 18, 1983.

Rehearing and Rehearing En Banc Denied June 28, 1983.

Certiorari Denied Oct. 11, 1983. See 104 S.Ct. 246.

Lewis Murphy, Miami, Fla., Court appointed, for defendant-appellant.

Joseph T. Urbaniak, Jr., Asst. U.S. Atty., Orlando, Fla., Joel Gershowitz, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before VANCE and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Joseph Scott Laing appeals his conviction for the unlawful possession of methaqualone, in violation of 21 U.S.C. § 841. He urges that the search which uncovered the drug contravened his fourth amendment rights, and therefore, that the district court erred in denying his motion to suppress the evidence. Finding no constitutional violation, we affirm.

As part of an undercover operation, an agent of the Drug Enforcement Administration (DEA), in conjunction with local law enforcement officials, apprehended Laing while he was driving an automobile. At the time of the arrest, the DEA agent had probable cause to believe the defendant was carrying marijuana in the trunk of the vehicle.[1] Local police officers transported Laing to jail while the DEA agent took custody of the car. Upon reaching the DEA office, the agent, without first obtaining a warrant, opened the trunk of the automobile and located two bales of marijuana. Thereafter, he removed an unsecured Yahtzee game box from the trunk during the process of making an inventory of its contents. Inside the box, the agent found 954 methaqualone tablets.

Based on that discovery, the government obtained an additional one count indictment against Laing charging him with possession of methaqualone. In a pre-trial motion, the defendant urged the district court to suppress the drugs found in the Yahtzee box. He claimed that the DEA agent violated the fourth amendment by opening the closed container in the trunk without first obtaining a warrant. The district court denied the motion and, following a bench trial, found Laing guilty. This appeal followed.

We note at the outset that the basis of the district court's oral ruling denying the suppression motion is not entirely clear. At one point during the hearing, the judge suggested that the search could not be justified as an inventory search because, in his view, the DEA agent had deviated from departmental procedures. Later, the court appears to have upheld the search as a permissible inventory check conducted pursuant to a valid forfeiture under 49 U.S.C.

1. Laing's initial arrest resulted in his conviction on a charge of possession of marijuana with intent to distribute. This court recently affirmed without opinion that judgment in *United States v. Wainer,* 703 F.2d 581 (1983) (11th Cir.R.25).

§ 782. *See United States v. Sink,* 586 F.2d 1041, 1048 (5th Cir.1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). However, we need not dwell on the precise import of the district court's findings, in view of our conclusion that the search was constitutionally authorized as an inventory check.[2]

■ The Supreme Court has recognized the reasonableness of inventory searches when executed in accordance with standard police practice. *E.g., South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000, 1009 (1976); *see also United States v. Edwards,* 577 F.2d 883, 893 (5th Cir.) *(en banc), cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Judicial tolerance of such searches derives from the need to protect the owner's property, to protect the police from disputes over lost property and to protect the police from potential danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005; *see also United States v. Prescott,* 599 F.2d 103, 105 (5th Cir.1979). To conduct a routine inventory check, law enforcement officials need not obtain a warrant. *See United States v. Bosby,* 675 F.2d 1174, 1179 (11th Cir.1982). However, "[i]nventory searches must be limited to effectuation of the recognized purposes, for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *Prescott,* 599 F.2d at 105. One of the strongest indications that an inventory

check was indeed conducted for legitimate purposes is evidence that such a search is a standard practice for the particular law enforcement agency. 599 F.2d at 106.

In this case, the government presented ample uncontroverted proof that the DEA agent's inspection of the contents of Laing's car was a customary procedure. At the hearing, the officer testified that upon seizing Laing's vehicle, he drove it back to the DEA administrative office. There, he removed all items of personal property from the automobile and compiled a detailed list of the articles. The agent then placed the effects in the office in which such items were normally stored. As he explained the procedure, "[w]henever a vehicle is seized, all valuables, anything that could be removed from the vehicle, is customarily removed from the vehicle for safekeeping." Hearing Transcript at 123. This uncontradicted testimony sufficiently established the routine nature of the procedure, thereby eliminating the possibility that the inventory check was conducted as a subterfuge for an investigatory search.[3] *C.f. Bosby,* 675 F.2d at 1179.

The defendant contends that even if the inventory search itself was proper, its lawful scope did not extend to the inspection of the contents of a closed container, in this instance, the Yahtzee box. Prior to the recent line of Supreme Court cases exploring the interrelationship between movable containers and the automobile exception to

**2.** For the same reason, we need not consider the possibility that the standard for permitting a search conducted after a forfeiture may be less stringent than that governing inventory searches in other contexts. *See United States v. Johnson,* 572 F.2d 227 (9th Cir.) *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978); *United States v. Zaicek,* 519 F.2d 412 (2d Cir.1975).

**3.** We see no significance in the fact that the DEA transported several other vehicles apprehended that day directly to an impoundment garage and obtained warrants before conducting a search, whereas Laing's automobile was carried first to the DEA's administrative office and searched without a warrant. As previously noted, a warrant is unnecessary for a lawful

inventory search. *See, e.g., Bosby,* 675 F.2d at 1179. Moreover, no evidence at the suppression hearing suggested that DEA policy required the officer to first take the vehicle to the garage, search it there, and then move the items to the administrative office for safekeeping, in contrast to the procedure followed by the agent having custody of Laing's car. The trial judge did remark at one point in the hearing that this discrepancy might invalidate the inventory search of the defendant's vehicle. To the extent, if any, that this comment was intended to be a finding of fact, we reject it as "clearly erroneous." *See, e.g., United States v. Vargas,* 643 F.2d 296, 297 (5th Cir.1981); *United States v. Jonas,* 639 F.2d 200, 204 (5th Cir. 1981).

the warrant requirement,[4] this court consistently held that "when the police take custody of any sort of container—be it an automobile, suitcase, or any other thing in which property may be stored—it is reasonable to search the container to itemize the property to be held by the police." *United States v. Gravitt,* 484 F.2d 375, 378 (5th Cir.1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974). We agree with the suggestion of the Second Circuit that the Supreme Court's decisions in *Chadwick* and *Sanders* should not alter the permissible scope of a valid inventory search.[5] *See United States v. Smith,* 621 F.2d 483, 488 (2d Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). Those cases involved warrantless *investigatory* searches of closed containers seized from automobiles. *See Chadwick,* 433 U.S. at 3, 97 S.Ct. at 2479, 53 L.Ed.2d at 543; *Sanders,* 442 U.S. at 761, 99 S.Ct. at 2592, 61 L.Ed.2d at 243; *see also United States v. Ross,* 456 U.S. at 799, 102 S.Ct. at 2159, 72 L.Ed.2d at 578. In the inventory context, however, the issue is not whether the existence of probable cause, coupled with the mobility of the property, justifies a warrantless search of the container. *See Opperman,* 428 U.S. at 370 n. 5, 96 S.Ct. at 3097 n. 5, 49 L.Ed.2d at 1006 n. 5; *Smith,* 621 F.2d at 488. Rather, the legitimacy of the search in this instance turns on its reasonableness in light of the community caretaking functions that allow inventory searches. *See, e.g., Edwards,* 577 F.2d at 893.

As always, the reasonableness of the inventory search depends on the particular facts and circumstances. *See Edwards,* 577 F.2d at 893. Here, the agent testified that the Yahtzee box was unsecured and that it seemed to be unusually heavy. Thus, he explained, he opened the container to see if it held anything of value that might need to be catalogued. This intrusion was justified by the purposes of an inventory search, especially the need to protect the police from claims pertaining to lost or stolen property. *See Edwards,* 577 F.2d at 894. Moreover, as previously discussed, the search was conducted as a routine inventory matter, and not as a pretext for an investigative search.

In short, the inventory search of the automobile, including the Yahtzee box, was reasonable. Accordingly, the court correctly denied the motion to suppress the evidence discovered in that box.

AFFIRMED.

4. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

5. Thus, we reject the contrary view expressed in cases such as *United States v. Monclavo-Cruz,* 662 F.2d 1285 (9th Cir.1981); *United States v. Bloomfield,* 594 F.2d 1200 (8th Cir. 1979); and *United States v. Davis,* 501 F.Supp. 23 (N.D.Ga.1980) (motion to suppress granted), *subsequent conviction aff'd,* 647 F.2d 1119 (5th Cir.1981) (table).