

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00002-CR

_____

ERIC STALLONS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F16-629-16

Before Gabriel, Pittman, and Birdwell, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Eric Stallons appeals from his conviction and resulting seventeen-year sentence for intentionally or knowingly possessing four or more grams, but less than two hundred grams, of a controlled substance (methamphetamine). *See* Tex. Health & Safety Code Ann. § 481.115(a), (d); Tex. Penal Code Ann. § 12.42(b). In a single issue, he argues the trial court erroneously denied his motion to suppress evidence. We affirm.

## I. BACKGROUND

While on patrol on April 19, 2015, Denton police officer Jared Stevenson, who had a police recruit riding with him as an observer, noticed Stallons driving a car that had an expired temporary license plate. Officer Stevenson stopped Stallons, informed him why he had been stopped, and asked him for his driver's license and proof of insurance. Stallons produced his driver's license but did not have proof of insurance. While talking with Stallons, Officer Stevenson noticed that Stallons's hands were shaking and that he started sweating. Officer Stevenson went back to his patrol car to check if Stallons had any warrants and to make sure his driver's license was valid.

As Officer Stevenson returned to Stallons's car, he noticed that Stallons appeared to be stuffing something between the driver's seat and the center console. When Officer Stevenson reached the driver's side window, he asked Stallons about the movement he had just seen. Stallons became even more nervous and told Officer Stevenson that he had just been reaching for his phone. But Officer Stevenson

noticed that Stallons's phone was on top of the center console, not between the driver's seat and the console.

Officer Stevenson became "a little nervous" given Stallons's "furtive movement" inside the car because he did not know whether there was a weapon between the driver's seat and center console, so he asked Stallons if he could speak with Stallons outside of the car. Officer Stevenson added that Stallons was not in any trouble but that he would prefer to speak with Stallons outside of the car because Stallons's movement inside the car had made him uncomfortable. Stallons declined to speak with Officer Stevenson outside of the car. Officer Stevenson then walked to the front passenger window and looked inside the car, but he did not see anything from that vantage point that would have made it immediately necessary to get Stallons out of the car. Officer Stevenson continued speaking with Stallons through the front passenger window, and during that conversation, Stallons informed Officer Stevenson that he had received a ticket in Northlake for lack of insurance. Stallons further stated that he would not be able to prove to Officer Stevenson that he had insurance. After Stallons told Officer Stevenson that he had received a ticket in Northlake for lack of insurance and that he could not prove that he had insurance, Officer Stevenson decided to impound Stallons's car.

Officer Stevenson walked back around the car and to the front driver's side. As he did so, he told the recruit, who was standing nearby, that he was going to get Stallons out of the car. When he reached the driver's side, Officer Stevenson told

3

Stallons that he needed to get out of the car, Stallons complied, and Officer Stevenson had him walk to the back of the car. Officer Stevenson asked Stallons what he had put between his seat and the center console. Officer Stevenson told Stallons that he did not believe Stallons was reaching for his phone. Stallons replied that he had not put anything between the seat and center console but instead had been reaching for a wire that was connected to his phone.

Officer Stevenson asked Stallons again if he had put anything between the seat and center console. Officer Stevenson told Stallons that he was going to impound Stallons's car because he did not have insurance but that he wanted to make sure Stallons had not been doing anything illegal. Officer Stevenson asked Stallons if he had ever been arrested, and Stallons replied that he had, though he volunteered that he had not been arrested for anything drug-related. Officer Stevenson again asked Stallons if he had anything in his car that he should not have had or that he was trying to hide, and Stallons replied that he was not trying to hide anything. Officer Stevenson asked Stallons what he needed to get out of the car, and Officer Stevenson retrieved Stallons's wallet and phone and gave them to him.

Officer Stevenson returned to the front driver's side of the car and checked the area between the driver's seat and center console but did not discover a weapon. He then returned to his patrol car and wrote Stallons a ticket for his lack of vehicle registration and insurance. Officer Stevenson told Stallons that he needed to call someone to get him because the car was being impounded. Officer Stevenson again

4

asked Stallons what he needed to get out of the car before it was towed, but Stallons did not identify any items.

Officer Stevenson then conducted an inventory search of Stallons's car. In the course of that search, Officer Stevenson moved a jacket that was resting on the front passenger seat and discovered a wadded-up, clear plastic baggy lying on the corner of the passenger seat that was nearest to the center console. The baggy contained a white crystal substance that Officer Stevenson believed to be methamphetamine. Officer Stevenson walked back to Stallons and placed him in handcuffs, and when Stallons asked him why he was being arrested, Officer Stevenson replied that he found the methamphetamine that Stallons had hidden.

Officer Stevenson then returned to Stallons's car and conducted a probable-cause search. He discovered a black digital scale. Officer Stevenson again returned to Stallons and escorted him to the back of the patrol car. As he did so, Stallons dropped another baggy of methamphetamine on the ground that he had been hiding in his waistband.

Stallons filed a pretrial motion to suppress evidence alleging that the search of his car was illegal because it was performed without probable cause after a traffic stop. He asked the trial court to suppress any contraband found during the search. The trial court held a hearing and denied the motion without entering findings of fact or conclusions of law. Later, during the trial, the State offered, and the trial court admitted, the two baggies of methamphetamine into evidence.

Stallons challenges the trial court's denial of his motion to suppress. In a single issue, he argues Officer Stevenson's search of his car violated the Fourth Amendment, principally complaining that it was not a valid inventory search.

## II. STANDARD OF REVIEW

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

### III.  APPLICABLE LAW

The Fourth Amendment protects against unreasonable searches and seizures by government officials.  U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24.  A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if it is conducted pursuant to a lawful impoundment of the vehicle.[1] *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976); *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

To qualify as a valid inventory search, the inventory must be conducted in good faith and pursuant to a reasonable standardized police procedure.  *Moskey*, 333 S.W.3d at 700.  The inventory search must be designed to produce an inventory of the vehicle's contents and may not be used as a ruse for a general rummaging in order to discover incriminating evidence.  *Id.*  The State bears the burden to establish that the police conducted a lawful inventory search.  *Id.*  The State meets its burden by demonstrating that an inventory policy exists and the police officers followed the policy.  *Id.*

### IV.  DISCUSSION

Stallons concedes that the Denton Police Department had an inventory policy. He raises three other reasons why Officer Stevenson's search was illegal.  First, Stallons argues that Officer Stevenson did not follow his department's inventory

---

[1]Stallons does not challenge the lawfulness of the impoundment.

policy and offers two reasons why. One, he argues that Officer Stevenson's testimony shows that he sought to document only *valuable property* inside the car during his inventory, as opposed to the inventory policy's requirement that he list *any property* inside the car. And two, Stallons contends that even assuming the police department's policy allowed Officer Stevenson to document only valuable property in the car during the inventory, his completed inventory form shows he did not do so because he listed only two items, "Money" and "Tools."

But these were not among the grounds Stallons raised as a basis to suppress the challenged evidence either in his motion to suppress evidence or in the suppression hearing. Thus, these arguments are not preserved for review.[2] *See* Tex. R. App. P.

---

[2]Even if Stallons preserved these arguments, we would conclude the record supports a finding that Officer Stevenson followed the department's policy. During the hearing, Officer Stevenson testified that his department had a vehicle impound and inventory policy pertaining to situations where operators of motor vehicles fail to provide proof of insurance. He testified that in those situations, the department generally impounded the vehicle and called for a wrecker service. Officer Stevenson stated that occurred fairly routinely. He testified that officers were required to fill out an inventory form when they impounded a vehicle. And he testified that he conducted such an inventory of Stallons's vehicle and that he did so in a manner that was consistent with the department's policy. This testimony supports a finding that Officer Stevenson followed his department's policy when he performed the inventory search of Stallons's car. *See Stephen v. State*, 677 S.W.2d 42, 44 (Tex. Crim. App. 1984) (noting that the State may satisfy its burden to establish a valid inventory search "through the testimony of the officers that an inventory policy existed and that the policy was followed" and that "[t]here was no need to introduce into evidence a written inventory"); *Johnson v. State*, No. 07-11-00186-CR, 2013 WL 2297038, at *2 (Tex. App.—Amarillo May 21, 2013, no pet.) (mem. op., not designated for publication) ("An officer's testimony is sufficient to show an inventory search policy existed and was followed.").

8

33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial."); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *see also Spradley v. State*, Nos. 14-02-00266-CR, 14-02-00267-CR, 14-02-00268-CR, 2003 WL 21282468, at *2 (Tex. App.—Houston [14th Dist.] June 5, 2003, no pet.) (mem. op., not designated for publication) (holding appellant's argument that inventory search was not conducted pursuant to lawful impoundment of car did not comport with trial objection and, thus, was not preserved).

Second, Stallons maintains that Officer Stevenson's inventory was merely a ruse for a general rummaging through the car for incriminating evidence. Stallons calls attention to Officer Stevenson's initial search between the driver's seat and the center console. According to Stallons, the evidence shows Officer Stevenson suspected all along that he had been trying to conceal something illegal and that it was only after Officer Stevenson "found nothing" during his initial search that he began discussing Stallons's lack of insurance in more detail and made the decision to impound his car. Stallons further argues that Officer Stevenson's intent to search the car for incriminating evidence is only confirmed by the fact that when he arrested Stallons, he told Stallons that he had "found the meth that [Stallons had] hid."

The trial court implicitly found that Officer Stevenson's inventory of Stallons's car was not a ruse, and we conclude the record supports that implied finding. First,

contrary to Stallons's contention, the evidence supports a finding that Officer Stevenson made the decision to impound Stallons's car before he had performed any search of the car. Officer Stevenson testified that he made the decision to impound Stallons's car when he learned that Stallons had previously received a ticket in Northlake for lack of insurance and that Stallons would not be able to prove that he had insurance. Officer Stevenson's bodycam video, which was admitted at the suppression hearing, shows that Stallons told him these facts during their conversation while Officer Stevenson was at the front passenger window, a conversation that took place before Officer Stevenson had performed any search of the passenger compartment.[3]

In addition, almost immediately after Stallons told Officer Stevenson about his previous ticket and that he could not provide proof of insurance, Officer Stevenson asked him where he was headed, and Stallons replied that he was going to meet his

---

[3]At the hearing, Officer Stevenson's recollection was that he got Stallons out of the car and performed his initial search before Stallons told him about the prior ticket and confirming that he did not have insurance. Stallons relies on this testimony for his argument Officer Stevenson performed his initial search before he made the decision to impound the car. But Officer Stevenson's bodycam video shows that his encounter with Stallons occurred as we have described it. We further note that on several occasions, in response to questioning from both the prosecutor and Stallons's counsel, Officer Stevenson testified that his bodycam video would be the best source of evidence regarding his encounter with Stallons. In the face of any conflict between Officer Stevenson's testimony and his bodycam video, the trial court, as the sole factfinder, was entitled to resolve the conflict by believing the bodycam video. *See Wiede*, 214 S.W.3d at 24–25 (noting the trial judge "is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony when entertaining a motion to suppress" (quotation omitted)).

10

girlfriend. Officer Stevenson next asked Stallons if his girlfriend lived locally, and Stallons confirmed that she did. Then Officer Stevenson began walking to the front driver's side of the car, and as he did so, he told the police recruit who had been riding along with him that he was going to get Stallons out of the car. These additional facts support a conclusion that the reason Officer Stevenson asked Stallons if his girlfriend lived locally and told the police recruit that he was going to get Stallons out of the car was that he had decided to impound Stallons's car. So the record supports a finding that Officer Stevenson made the decision to impound the car not after his initial search turned up nothing, as Stallons contends, but before he even got Stallons out of the car.

With respect to Officer Stevenson's statement to Stallons upon arrest that he had found the methamphetamine Stallons had hidden, we note that Officer Stevenson did testify that before he searched the car, he harbored a suspicion that Stallons may have been hiding something inside it, a fact that was confirmed by the bodycam video. However, to the extent Stallons contends that Officer Stevenson's suspicion that he had hidden contraband in the car demonstrates that the inventory search was a ruse, we disagree.

As the court of criminal appeals has noted, "[i]t would not be realistic to require that in justifying an inventory search the police must affirm that they had absolutely no hopes or expectation of finding contraband or other inculpatory material." *Vargas v. State*, 542 S.W.2d 151, 154–55 (Tex. Crim. App. 1976). Thus,

11

"[a]n inventory search is reasonable under the requirements of the Fourth Amendment not for the reason that the subjective motives of the police are simplistically pure, but because the facts of the situation indicate that an inventory search is reasonable under the circumstances." *Id.* at 155; *see also United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982) ("[T]he mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search."); *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir. 1979) ("If an inventory search is otherwise reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found.").

As we have noted, an inventory search of a lawfully impounded vehicle is reasonable under the Fourth Amendment. *See Opperman*, 428 U.S. at 372 ("[I]nventories pursuant to standard police procedures are reasonable."); *Moskey*, 333 S.W.3d at 700 ("A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle."). Officer Stevenson testified that the Denton Police Department has a policy of inventorying vehicles that are impounded due to the failure to provide proof of insurance. Officer Stevenson stated that generally speaking, if officers with the Denton Police Department pulled someone over who did not have proof of insurance, the officers "would impound the vehicle for no insurance and call for a wrecker service," and he added that this was something that

12

happened fairly routinely. Stallons does not contest the fact that he did not have proof of insurance when Officer Stevenson stopped him.

Further, Officer Stevenson testified that he did not decide to impound Stallons's car because he believed an inventory would turn up something illegal. Rather, as noted above, the record supports a finding that Officer Stevenson decided to impound Stallons's vehicle because he had a prior ticket for failure to provide proof of insurance and because he did not have proof of insurance. In these circumstances, the fact that Officer Stevenson may have also had a suspicion that Stallons was hiding something in his car did not vitiate the validity of the inventory search. *See Vargas*, 542 S.W.2d at 154–155; *Bosby*, 675 F.2d at 1179.

Finally, Stallons argues that Officer Stevenson's initial search between the driver's seat and center console was itself an illegal warrantless search that so blatantly violated the Fourth Amendment that it tainted the subsequent inventory search, necessitating the suppression of any evidence found during the inventory search. Stallons bases this argument on the Supreme Court's decision in *Arizona v. Gant*, a case involving the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. *See* 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

13

Stallons's argument necessarily turns on his claim that Officer Stevenson's initial search of his car occurred before he impounded it. But as we have already explained, the record supports a finding that Officer Stevenson did not search Stallons's car until after he had impounded it. Stallons concedes that the Denton Police Department has a policy of inventorying impounded vehicles, and he either did not preserve any arguments that Officer Stevenson failed to follow that policy when searching his car or, if he did preserve such arguments, the record supports a finding that Officer Stevenson followed the policy when conducting the search. Accordingly, because the record supports a finding that Officer Stevenson's search of Stallons's car was a valid inventory search, *Gant* is inapplicable. *See Moskey*, 333 S.W.3d at 700 (noting the State meets its burden to establish a valid inventory search by demonstrating (1) an inventory policy exists and (2) the officers followed the policy); *Garcia v. State*, No. 05-10-00521-CR, 2011 WL 5231426, at *4 (Tex. App.—Dallas Nov. 3, 2011, no pet.) (mem. op., not designated for publication) ("Because the search at issue in this case satisfies the requirements for a valid inventory search, *Gant* does not apply.").

In sum, we conclude that the record supports a finding that Officer Stevenson's search of Stallons's car was a valid inventory search. Accordingly, the trial court did not err by denying his motion to suppress evidence. We overrule Stallons's sole issue.

## V. CONCLUSION

Having overruled Stallons's sole issue, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 18, 2019