

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00405-CR

Cody Tyler **MORROW**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR7705
Benjamin Robertson, Judge Presiding

Opinion by:　Lori Massey Brissette, Justice

Sitting:　　Rebeca C. Martinez, Chief Justice
　　　　　Lori Massey Brissette, Justice
　　　　　Velia J. Meza, Justice

Delivered and Filed: April 15, 2026

AFFIRMED

Appellant Cody Tyler Morrow appeals his judgment of conviction for second degree felony possession of a controlled substance (fentanyl of greater than four grams but less than 200 grams). In one issue, he argues the trial court erred when it denied his motion to suppress the evidence secured as a result of a search of his vehicle. Based on the law and the record, we affirm.

BACKGROUND

On May 12, 2022, San Antonio Police Department (SAPD) Officer Anthony Gladstone responded to a call reporting a possibly injured or sick person parked in a vehicle in front of a closed convenience store and gas station. When he arrived, Morrow was slumped over in the driver's seat and unconscious. Through a partially open passenger window, Officer Gladstone smelled marijuana and then observed it from outside the vehicle in a clear plastic container in plain view. With the assistance of another officer, Officer Gladstone removed Morrow, still unconscious, from the vehicle. Before EMS arrived, Officer Gladstone also observed, in plain view, a clear plastic baggie containing hundreds of pills. EMS arrived shortly thereafter and revived Morrow. The pills were later tested and confirmed to be fentanyl.

Morrow was indicted on August 31, 2023 on two counts: (1) first degree felony possession with intent to deliver fentanyl of greater than four grams but less than 200 grams, and (2) second degree felony possession of fentanyl of greater than four grams but less than 200 grams. *See* TEX. PEN. CODE §§ 481.1022, 481.1123, 481.115. Morrow moved to suppress the evidence obtained because of the encounter with Officer Gladstone, but the trial court denied his motion.

After a March 28 2025 bench trial, the trial court found Morrow not guilty as to count I and guilty on count II. Morrow was sentenced to twelve years with the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

MOTION TO SUPPRESS

**A. The Hearing and Video Evidence**

During the motion to suppress hearing, Officer Gladstone testified that at approximately 1:30 a.m. on May 12, 2022 he received the call to assist When he arrived on scene, he noticed Morrow's vehicle had its engine running and was backed up to the convenience store's front

facade. He also noticed the vehicle had been driven over the curb-height concrete parking block. As he approached, he saw Morrow inside the driver's seat, slumped over and unconscious. Officer Gladstone remarked over his body cam that Morrow appeared "drugged up."

He then approached the passenger side of the vehicle to determine, for safety purposes, that there were no weapons in the vehicle. Through the partially opened window on the front passenger side, Officer Gladstone smelled marijuana emanating from the vehicle and observed, in plain view, "a lot of blood" and "a lot of dope" including marijuana on a circular dish on the passenger seat and on the floorboard in a clear plastic breakfast cereal dispenser with a white top. Officer Gladstone contacted EMS for assistance.

When an additional patrol unit arrived to assist Officer Gladstone, Gladstone instructed the officer driving it to block Morrow's vehicle. He testified Morrow's foot was pressing the vehicle's brake, and he was concerned that if he roused Morrow from his unconscious state, Morrow would instinctually accelerate the vehicle out of the parking spot or the vehicle would just otherwise start moving forward.[1]

Officer Gladstone then indicated to the additional patrol officer that he wanted to remove Morrow from the car, explaining he had been breathing, but he wanted to make sure he was not "dead."[2] Officer Gladstone's fellow officer tried to rouse Morrow telling him to wake up and by applying sternum rubs, but Morrow was not responsive. Officer Gladstone at this point assisted the other officer attempting to render Morrow conscious from the passenger side of the vehicle. They then removed Morrow, who was unresponsive, to the ground a few feet from the vehicle.

---

[1] Indeed, after Morrow was taken from the scene by EMS, and the patrol unit was removed from obstructing his vehicle, Morrow's vehicle began to move forward, prompting Officer Gladstone to hop into it and put it in park with the assistance of another officer.

[2] Officer Gladstone also told the other officers Morrow was breathing, but he wanted to keep Morrow lying on his side. He later used profanity to express his shock at the delay of EMS's arrival.

But that did not rouse him. Officer Gladstone believed, as a result, Morrow was extremely intoxicated with something other than marijuana, and he was concerned about his well-being. Officer Gladstone checked Morrow's pulse, noticed it was "running fast," and also noticed Morrow had blood on his fingers and some white substance around his nose. Officer Gladstone also tried, multiple times, to rouse Morrow from his unconscious state by shaking him. Another patrol officer administered Narcan to Morrow, but it was ineffective.

Officer Gladstone then returned to the passenger side of the vehicle to try and figure out what Morrow had taken since he was still unresponsive, and he wanted to be able to assist EMTs with all the information he could upon their arrival. He testified that at that point "[e]verything was in plain sight already." There inside the vehicle he observed a small, clear plastic baggie containing hundreds of small light blue pills, within Morrow's reach as the driver of the vehicle. He then held up the baggie of "over a hundred" pills he found and asked another officer what they would label it and whether it was for distribution.[3] Officer Gladstone then remarked that he believed Morrow needed to be transported to a hospital.

The Fire Department and EMS arrived and proceeded to administer Narcan twice—the third time overall—and it worked, rendering Morrow alert. Once conscious, Morrow told Officer Gladstone he only smoked marijuana, but he did not know if it was "laced." He also said his fingers were bloody because he cut one of his fingers. Morrow was not arrested that evening. Instead, he was transported by EMS to a hospital.

On cross-examination, Officer Gladstone conceded there were no other cars at the gas station and Morrow did not impede traffic. He also testified he did not identify on scene the specific

---

[3] Officer Gladstone also located what appeared to be dollar bills on printer paper, which he suggested on his body cam might be for potential counterfeit use.

type of drugs the pills were. He further testified that once he removed Morrow from the vehicle, there was no threat to Officer Gladstone and his fellow officers from Morrow. Officer Gladstone also testified he detained Morrow even if he did not arrest him but never told Morrow he was not free to leave and never handcuffed him.

The State argued that when Officer Gladstone approached Morrow's vehicle and saw him slumped over in the front driver's seat, he was acting in a community caretaking capacity. It further contended that with Morrow's vehicle backed all the way up over the concrete block and abutting the building, combined with Morrow's physical state, Officer Gladstone had reasonable suspicion. Moreover, when Officer Gladstone observed marijuana in plain view, he had probable cause to search the vehicle.

Defense counsel conceded there was a clear community caretaking function from the beginning of the encounter and through the point where they had trouble rousing Morrow from unconsciousness. Counsel further acknowledged the marijuana was in plain view. He contended, however, that once they removed Morrow from the vehicle, there was no such function to go back to the vehicle to search it and to try and identify the pills.

After the hearing, the trial court denied the motion to suppress, finding Officer Gladstone's "search and seizure was primarily motivated by community caretaking" and that Officer Gladstone's belief that Morrow "needed help was reasonable." The court also found "the plain view exception applie[d]" and denied the motion to suppress. But it did not issue separate findings of fact and conclusions of law.

### B. Standard of Review

We review the trial court's order denying a motion to suppress for abuse of discretion. *See, e.g.*, *State v. McGuire*, 689 S.W.3d 596, 601 (Tex. Crim. App. 2024). Within that review, we

"[a]lmost complete[ly] defer[]" to the trial court's "determination of historical facts if supported by the record, especially when the factfinding is based on an evaluation of credibility and demeanor." *Monjaras v. State*, 664 S.W.3d 921, 926–27 (Tex. Crim. App. 2022). But we review the trial court's legal rulings de novo, including its application of law to the facts of the case. *Monjaras*, 664 S.W.3d at 926–27; *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

During our review, we view the evidence in the light most favorable to the trial court's ruling and "assume that the trial court credited or discredited witness testimony in whatever way supports its decision." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). In short, "the winning side is afforded the 'strongest legitimate view of the evidence' as well as all reasonable inferences that can be derived from it." *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013) (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)). But "if evidence is conclusive, such as indisputable video evidence, we may disregard any trial court findings inconsistent with the conclusive evidence." *Monjaras*, 664 S.W.3d at 926.

If findings of fact are not entered, as here, we assume the judge made implicit findings of fact supporting the ruling if the findings are supported by the record. *See, e.g.*, *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016); *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017). And we will sustain the judge's ruling if the record reasonably supports that ruling and it is correct on any theory of law applicable to the case. *See, e.g.*, *Cole*, 490 S.W.3d at 922; *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016).[4]

---

[4] We consider a theory of law applicable to a given case if the theory was litigated in the trial court with evidence presented by the parties. *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016).

### C. Analysis

Morrow argues the trial court erred when it failed to grant his motion to suppress because the trial court misapplied the community caretaking doctrine. We disagree.

### 1. Community Caretaking

The Fourth Amendment of the U.S. Constitution recognizes a citizen's right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV; *Monjaras* 664 S.W.3d at 927. But under certain circumstances, warrantless searches and/or seizures may be reasonable. One reasonable exception to the Fourth Amendment's warrant requirement is when law enforcement performs a community caretaking function. *Nava v. State*, 480 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). *See generally Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). The community caretaking function is "totally divorced from the detection, investigation, and acquisition of evidence relating to the violation of a criminal statute." *Byram v. State*, 510 S.W.3d 918, 922 (Tex. Crim. App. 2017). It involves officers stopping and assisting individuals whom a reasonable person under the totality of the circumstances believes would need help.[5] *Id.* A police officer may not invoke this function if the officer is primarily motivated by a non–community caretaking purpose like "ferreting out crime." *Id.* Determining whether an officer may properly invoke their community-caretaking role typically involves a two-step inquiry: (1) whether an officer was primarily motivated by community caretaking; and (2) whether the officer' held a reasonable belief the individual needed help. *Id.*

---

[5] *See generally Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003) (providing community caretaking doctrine is broad term for three separate doctrines: (1) the emergency aid doctrine; (2) automobile impoundment and inventory doctrine; and (3) community caretaking—or public servant—doctrine).

The first inquiry is subjective; it requires us to defer to the trial court's assessment of the officer's credibility and demeanor when they testified at the suppression hearing.[6] *See Byram*, 510 S.W.3d at 922; *Gonzales v. State*, 369 S.W.3d 851, 855 (Tex. Crim. App. 2012) (same). Here, Officer Gladstone testified that when Morrow could not be roused back to consciousness, even after removing him from the vehicle, he was concerned about his well-being. The body cam also shows Officer Gladstone repeatedly expressing concern about Morrow's breathing and whether he was still alive. Officer Gladstone also demonstrated an interest in what Morrow had been taking because they could not rouse him with Narcan, EMTs were arriving, and he wanted to be able to assist them in their care of Morrow with as much information as he could. By denying the motion to suppress based on the community caretaking function, the trial court implicitly found this testimony as well as the video evidence supporting it to be true. *See Byram*, 510 S.W.3d at 922 & n.5; *Gonzales*, 369 S.W.3d at 855. With no video evidence to the contrary, we must defer to these credibility determinations. *Monjaras*, 664 S.W.3d at 926.

We therefore turn to the second prong: the objective inquiry of whether Officer Gladstone's belief was reasonable. *See Byram*, 510 S.W.3d at 922–23. Under this standard, the question of whether a reasonable person under those circumstances would believe a person needed assistance is a legal question like reasonable suspicion or probable cause that we review de novo. *See Byram*, 510 S.W.3d at 923. In determining whether an officer reasonably believed a person was in need of help, we may consider a non-exclusive list of relevant matters like: (1) the nature and level of distress exhibited by the individual; (2) the location of the individual; (3) whether or not the

---

[6] In *Byram*, the Court of Criminal Appeals questioned, but did not overrule, the application of the first inquiry into the officer's primary motivations, noting the United States Supreme Court's opinion in *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) cast doubt upon it. *See Byram*, 510 S.W.3d at 922 n.5 (citing *Ashcroft*, 563 U.S. at 736, among others, for proposition that Fourth Amendment reasonableness is predominately objective inquiry and state actions justified by objectively viewed circumstances are reasonable regardless of subjective intent motivating relevant officials); *see Gonzales*, 369 S.W.3d at 855.

individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to herself or others. *See id.* (citing *Wright*, 7 S.W.3d at 151–52, explaining factors were useful considerations, but reasonableness was ultimate standard); *see also Gonzales*, 369 S.W.3d at 854 (providing Fourth Amendment requires "only reasonableness"). The individual's nature and level of distress is entitled to the most weight, but it is not always dispositive.[7] *See Byram*, 510 S.W.3d at 923; *see also Gonzales*, 369 S.W.3d at 855 (explaining particular level of exhibited distress may be seen as more or less serious depending on presence or absence of other factors and unique circumstances may swing balance of calculus one way or the other).

Here, under the totality of the circumstances surrounding Morrow at the time Officer Gladstone approached his vehicle to render aid, a reasonable person would believe Morrow needed assistance, triggering the officer's community caretaking function. *See Byram*, 510 S.W.3d at 923–25. Each of the nonexclusive list of factors demonstrates Officer Gladstone's actions support that he was acting in a community caretaking role. *See id.* at 923. Officer Gladstone only arrived on scene after being informed of an injured or possibly sick person at the closed convenience store in the middle of the night. *See id.* at 923. When he arrived on scene, Morrow was clearly in significant distress, unconscious, slumped over the steering wheel of his vehicle, and had driven his vehicle over a parking block into a building. *See id.* (applying first *Wright* factor and noting officer observed individual hunched over and motionless, as reek of alcohol wafted out of vehicle). The vehicle was in an empty business lot in the middle of the night with no other vehicles around to offer assistance. And Morrow had his foot on the brake with the engine running and could have at

---

[7] The fourth factor should be accorded little weight unless it applies to the unique facts of the case. *See Byram*, 510 S.W.3d at 924.

any moment hit the gas and injured himself or otherwise took his foot off of the brake and crashed into a gas pump. *See id.* Officer Gladstone and a fellow officer could not rouse Morrow from unconsciousness and removed him from the vehicle to monitor his life signs and administer Narcan.

Accordingly, Officer Gladstone's decision to render aid was reasonable, and therefore properly considered an application of the community caretaking function. Indeed, the trial court made clear the motivation from Officer Gladstone's body cam "seemed very apparent to" be community caretaking because, even after Morrow was taken out of the vehicle, Officer Gladstone was searching the vehicle "trying to figure out what the drug was" that Morrow took that had him out "cold" so he "could help with administer[ing] aid to him. That's what it seemed like to me," noting Morrow was not responsive to the initial administration of Narcan. The court also indicated it was clear he took "a pill of some sort," and if the officers were able to identify them that would have been helpful to his care. In short, Officer's Gladstone's actions are the sort of "'sound, commonsense police work that reason commends, rather than condemns.'" *See Byram*, 510 S.W.3d at 925 (quoting *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir. 1979)).

### 2. Plain View

Still, Morrow argues the community caretaking function ended before Officer Gladstone found the pills, and the pills were not in plain view, based on Officer Gladstone's testimony. Although searches conducted without a warrant are per se unreasonable, seizing contraband in plain view does not run afoul of the Fourth Amendment. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013). The plain view doctrine is lawfully applied if (1) the officer sees an item in plain view at a vantage point where the officer has the right to be, (2) the incriminating character

of the contraband in plain view is immediately apparent; and (3) the police officer has the right to access the object. *See id. see also Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009).

Here, although Officer Gladstone appeared to imply early during his testimony the pills were not in plain view, he later testified they *were* in plain view. Moreover, the trial court credited the latter testimony, and we have no basis—based on the body cam or otherwise—to not defer to the trial court's determination of the facts based on its decision to credit the testimony in question. *See Byram*, 510 S.W.3d at 922 & n.5; *Gonzales*, 369 S.W.3d at 855 (deferring to trial court determination of officer's primary motivation for community-caretaking when it was supported by record because issue "depends so much on credibility and demeanor"); *see also Monjaras*, 664 S.W.3d at 926–27.

As to the second prong, the "immediately apparent" requirement does not require actual knowledge of incriminating evidence. *Young v. State*, 563 S.W.3d 325, 330 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Instead, it requires that the item in plain view of the officer give the officer probable cause to believe it is contraband before seizing it. *See Young*, 563 S.W.3d at 330–31. Probable cause "is a commonsense, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)) (cleaned up). In making this assessment, law enforcement officers may rely on their training and experience to draw inferences and make deductions that might elude the untrained eye. *See Young*, 563 S.W.3d at 331. Viewing it objectively, probable cause exists if the facts and circumstances known to an officer are sufficient in themselves to warrant a reasonable person's belief that an offense has been or is being committed. *See, e.g., Young*, 563 S.W.3d at 331; *see also Martinez v. State*, 620 S.W.3d 734, 740

(Tex. Crim. App. 2021) (providing probable cause requires more than bare suspicion but less than what would be needed for conviction). To determine if an officer has probable cause, we consider the totality of the circumstances known to the officer, eschewing a divide-and-conquer or piecemeal approach. *See, e.g.*, *Young*, 563 S.W.3d at 331; *Marcopoulos v. State*, 538 S.W.3d 596, 600 (Tex. Crim. App. 2017).

Here, even if Officer Gladstone had not been exercising his community caretaking function in his effort to assist Morrow when he found the contraband in plain view, and he was, he testified that based on his seven years of training and experience, he smelled marijuana coming from the passenger side of the vehicle when he approached it, even before he saw it in plain view. He then saw marijuana in plain view and its criminal nature was immediately apparent; Morrow readily concedes this. He also testified the clear plastic baggie of pills were in plain view, and the video shows they were visible on the passenger side of the vehicle. Officer Gladstone further testified based on his experience it was immediately apparent to him that the pills were contraband and probably the cause of Morrow's condition, even if he was uncertain as to the specific type of offense. Based on Officer Gladstone's training and experience, his testimony, and the totality of the circumstances explained above, the officer had probable cause.[8] And, the incriminating character of the contraband in plain view was immediately apparent.[9] *Betts*, 397 S.W.3d at 206.

As to the third category, the right to access the object in question must be rendered reasonable by something other than plain view. *See Betts*, 397 S.W.3d at 206. Here, Officer

---

[8] The trial court apparently credited Officer Gladstone's testimony as well, explaining the officer had probable cause because the nature of the pills were immediately apparent, and, based on the totality of the circumstances, it could not understand how the testimony and video did not show the pills clearly in plain view and how someone would not believe the pills were "an instrumentality of the crime based on everything that we saw in the video."

[9] Morrow further argues the fentanyl was not immediately apparent without removing the top of the dispenser, but Morrow is mistaken as to the facts. Officer Gladstone's body cam shows the pills were clearly in a baggie, not in the dispenser, and the marijuana was in a round circular dish in the passenger seat as well as in the dispenser in plain view on the floorboard.

Gladstone had an initial right to access the object because he was inside the vehicle exercising his community caretaking function to assist Morrow, who was unconscious, and to assist EMTs in determining what Morrow had taken to permit them to render emergency assistance. Thus, once Officer Gladstone saw the pills in plain view, during the exercise of his community caretaking function, he was entitled to seize it for investigatory purposes.

Even if the officer's actions began to simultaneously include a community caretaking function and an investigative function, there is no reason those cannot coexist if Officer Gladstone's actions were justified at their inception under the community caretaking function. *See Byram*, 510 S.W.3d at 924 & n.8 & n.9.[10]

We therefore reject Morrow's contentions that Officer Gladstone violated his Fourth Amendment rights and conclude the officer properly secured contraband in plain view while exercising his community caretaking function.[11]

## CONCLUSION

Accordingly, we affirm the trial court's denial of Morrow's motion to suppress.

Lori Massey Brissette, Justice

DO NOT PUBLISH

---

[10] Morrow further contends his encounter with Officer Gladstone should have been consensual and he should have therefore been free to leave thereafter. As an initial matter, there was no basis to consider whether the initial encounter was consensual because Morrow was unconscious, and Officer Gladstone could therefore not have interacted with him in any intelligible fashion. And, by the time the EMTs had already arrived and administered Narcan rendering Morrow conscious, Officer Gladstone had already secured contraband from Morrow's vehicle.

[11] Even if he had not had access to the vehicle pursuant to his community caretaking duties, Officer Gladstone was exercising his community caretaking duties when he first approached the vehicle and his plain view of the marijuana and clear plastic baggie with hundreds of pills, combined with totality of the other circumstances identified above, triggered Officer Gladstone's right to conduct a warrantless search under the automobile exception because the vehicle was readily mobile and Officer Gladstone had probable cause to believe it contained contraband—i.e., marijuana and hundreds of pills. *See Marcopoulos*, 538 S.W.3d at 600 (providing requirements for automobile exception that vehicle must be readily mobile and there must be probable cause to believe it contains contraband and explaining reviewing courts determining whether probable cause exists must take into account totality of the circumstances known to officer, eschewing divide-and-conquer or piecemeal analysis); *see also Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (providing less rigorous warrant requirements govern vehicles because privacy expectation as to automobile is significantly less than that relating to an individual's home or office).